MIGUEL MERLE, demandante y recurrente, *v.* WEST BEND COMPANY y OTROS, demandados y recurridos.

*Número:* R-68-6      *Resuelto:* 9 de junio de 1969

404

*Sánchez & Maldonado*, abogados del recurrente; *McConnell, Valdés, Kelley & Sifre* y *José E. Bengoa Toro*, abogados de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Cobijándose en las disposiciones de la Ley Núm. 75 de 24 de junio de 1964, (¹) que reglamenta la terminación de contratos de distribución, y del Art. 1802 del Código Civil, (²) el recurrente Miguel Merle incoó una demanda de daños y perjuicios contra los recurridos West Bend Co. y Andrew Foti (³) reclamándoles la cantidad de $125,000. Alegó como razón de pedir que "con posterioridad al 15 de julio de 1964 la demandada West Bend Co. y el demandado Andrew Foti, actuando de común acuerdo, conspiraron para privar al demandante, como de hecho lo privaron, de sus derechos como distribuidor de la Kitchen Queen para Puerto Rico, arbitraria, caprichosa e injustificadamente, y sin que el demandante hubiera dado motivo para tal actuación." (⁴)

Tanto West Bend como Foti negaron las alegaciones contenidas en la demanda, reclamando, además, este último, por vía de reconvención, ciertas cantidades contra Merle. Antes de la vista del caso en sus méritos, el recurrente Merle y el

---

(¹) 10 L.P.R.A. secs. 278 y siguientes.

(²) 31 L.P.R.A. sec. 5141.

(³) La acción contra West Bend se amparó en la precitada Ley Núm. 75, mientras que la acción contra Foti se ejercitó bajo el Art. 1802.

(⁴) Párrafo 7 de la demanda.

codemandado Foti concertaron un contrato de transacción que sirvió de fundamentos para que el tribunal de instancia declarara el recurrente por desistido de su acción contra Foti y a éste de su reconvención contra aquél. El recurrente se allanó al desestimiento.

Así las cosas, West Bend solicitó la desestimación de la demanda contra ella, aduciendo que de acuerdo con la alegación contenida en el párrafo 7 de la demanda que citamos anteriormente, la responsabilidad de ella y de Foti era solidaria, y, que habiéndose relevado de responsabilidad a Foti en virtud de la transacción acordada entre éste y el demandante, tal relevo le beneficiaba como deudor solidario; por lo que procedía la desestimación de la demanda contra ella.

El tribunal de instancia declaró con lugar la moción de desestimación y dictó sentencia de conformidad. Expedimos el auto para revisarla.

El fundamento aducido por el tribunal de instancia para decretar la desestimación es que cuando el demandante recibe resarcimiento de uno de los causantes comunes del daño y releva a éste de responsabilidad, el otro causante común del daño queda igualmente relevado, extinguiéndose la causa de acción. El tribunal apoyó su conclusión en *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951), y varios casos de jurisdicciones estaduales. Interpretando el alcance de *García* v. *Gobierno de la Capital* el tribunal de instancia expresó en su sentencia:

"Lo que en efecto decide el Tribunal es que cuando un daño es el resultado de la negligencia combinada de dos personas y el perjudicado demandante recibe resarcimiento por el daño causádole por uno de éstos 'joint wrong doers' y en su virtud se dicta sentencia relevando de responsabilidad al que le resarció el daño, el otro causante del daño queda, en derecho, igualmente relevado extinguiéndose la causa de acción del demandante."

Estamos convencidos que la sentencia es errónea y debe revocarse.

*García* v. *Gobierno de la Capital* no envuelve directamente el punto aquí en controversia. En dicho caso reconocimos en nuestra jurisdicción el derecho de contribución entre causantes comunes de un daño. Se trataba de una demanda reclamando daños y perjuicios con motivo de un accidente de tránsito. García demandó al Gobierno de la Capital y a su aseguradora y éstos a su vez radicaron demanda de tercero contra Ricardo Quintero y su aseguradora, alegando, además, en la alternativa, que si alguna negligencia medió por parte del Gobierno de la Capital, medió así mismo negligencia concurrente por parte del Gobierno de la Capital y de Quintero, viniendo a ser ambos deudores solidarios de cualquier cantidad que por sentencia pudiera recaer y teniendo mutuamente derecho a recobrar de Quintero la mitad de la cantidad como contribución. Los terceros demandados interpusieron entonces una moción de desestimación de la demanda contra ellos, fundada en que el demandante García los había relevado y descargado de responsabilidad mediante el pago de $500. El tribunal de instancia declaró con lugar la moción para desestimar la demanda de tercero por entender que no existía en Puerto Rico el derecho de contribución y que, por lo tanto, desde el momento en que uno de los deudores solidarios transigió, su responsabilidad quedó extinguida para todos los efectos legales.

Revocamos en revisión dicha sentencia reconociendo, como ya dijimos, el derecho de contribución entre causantes comunes de un daño. Resolvimos específicamente que el relevo o descargo otorgado por un demandante a favor de un tercer demandado, codeudor solidario, equivalía a la quita o remisión a que se refiere el Art. 1099 del Código Civil, 31 L.P.R.A. sec. 3110, (⁵) el cual no libraba a dicho tercero demandado

---

(⁵) Dicho Artículo dispone:

"La quita o remisión hecha por el acreedor de la parte que afecte a uno de los deudores solidarios, no libra a éste de su responsabilidad para con los codeudores, en el caso de que la deuda haya sido pagada por cualquiera de ellos."

de su responsabilidad hacia los demás codeudores. En otras palabras, *García* v. *Gobierno de la Capital*, supra, estableció la doctrina de que el relevo o descargo de un tercero demandado, codeudor solidario, no es razón o motivo para desestimar la demanda de tercero a base de que la responsabilidad de éstos se extinguió en virtud del descargo. El pleito, a pesar del relevo, continuó contra los terceros demandantes, [6] quienes por supuesto, fueron los que interpusieron la demanda de tercero contra los relevados para que les respondieran en contribución. Mal podía el tribunal de instancia apoyar su fallo en lo resuelto por *García*.

Los casos de otras jurisdicciones citados por el tribunal de instancia para sostener su conclusión se basan en una antigua regla del derecho común anglosajón. En dicho sistema de derecho, el relevo de un causante común de un daño relevaba a los otros causantes comunes independientemente de la intención de las partes y de la suficiencia de causa. Prosser, *The Law of Torts*, § 46 a la pág. 269 (3ra. ed. 1964), Corbin, On Contracts, § 931 a la pág. 734 (1951), Williston, *On Contracts*, § 333 a la pág. 685 (3ra. ed. 1959). Se interpretaba que el relevo equivalía a un pago total, esto es, operaba como una presunción incontrovertible de pago que extinguía la obligación. Ello era así, aunque de hecho no se hubiese efectuado pago alguno y aun cuando la intención de las partes no contemplara el relevo de los demás causantes comunes de un daño. La inconsistencia lógica y la debilidad del razonamiento de esta regla causó gran insatisfacción que dio motivos a severas críticas. Prosser, *Joint Torts and Sev-*

---

[6] Aunque no estaba directamente envuelto, el sumario de *García* v. *Gobierno de la Capital* recoge lo que de esta situación resulta obvio y que es, precisamente, contrario a lo que resolvió el tribunal de instancia.

"Cuando un daño es el resultado de la negligencia combinada o concurrente de dos o más personas, el hecho de que el demandante transija con una de ellas cualesquiera derechos que aquél pueda tener contra ésta y la releve y descargue de toda responsabilidad, no libra a los demás demandados de su responsabilidad para con el demandante. Artículo 1099, Código Civil, ed. 1930."

*eral Liability*, 25 Calif. L. Rev. 413 (1937); Havighurst, *The Effect of a Settlement With One Co-Obligor Upon the Obligations on the Others*, 45 Cornell L.Q. 1 (1959); Wigmore *Diversities de la Ley*, (*sic*), 17 Ill. L. Rev. 563 (1922); Corbin, *supra*, a la pág. 736; Williston, *supra*, a la pág. 691; Harper and James, I *Laws of Torts* 711–712. Véase además, *Release of Joint Tortfeasors as Discharging Liabilities of Others. Modern Trends*, 73 A.L.R.2d 403, 407.

Prosser, *supra*, a la pág. 425, expresa los siguientes reparos a dicha regla:

"La norma de que el relevo de uno necesariamente releva a todos parece ser sumamente irrazonable. Un relevo de una causa de acción no constituye un relevo de otra independiente. La interrogante esencial es si la reclamación del demandante ha sido saldada; siendo ello claramente una cuestión de la intención de las partes, a ser determinada a la luz de las palabras del documento, la cantidad pagada, y las circunstancias circundantes. La objeción de que pueda haber una doble compensación carece de sentido, pues la cantidad pagada por el relevo tiene que ser acreditada a favor del segundo causante común de un daño. Aún aplicándolo a casos de acción concertada, la regla de que el relevo de uno releva a los demás parece un revivir de arcaicas normas procesales del Derecho común; y no tiene justificación alguna en los casos de mera negligencia concurrente."

Corbin, *supra*, a la pág. 736, la describe apropiadamente como una trampa.

"La norma de que el relevo voluntario de una de entre otras personas sujetas a un único cumplimiento liberaba a las demás operó como una trampa en la cual muchos acreedores han caído."

Williston, *supra*, a la pág. 691, señala con acierto:

"No es fácil encontrar una razón técnicamente satisfactoria para la anterior regla. La razón dada por los casos más antiguos es que un relevo es un derecho una compensación tan completa como el pago. Pero el relevo de un deudor no es necesariamente el relevo o pago de la deuda en sí. El acreedor puede que haya o no recibido el pago total de su reclamación cuando otorgó el

relevo. Por supuesto, si recibió el pago total se le negará el cobrar cantidades adicionales, pero si no ha recibido el pago total, no parece haber razón alguna por la cual se le dé en ese caso una solución diferente que la que se da cuando existiendo varios deudores existen varias obligaciones."

*Breen* v. *Peck*, 146 A.2d 665 (N.J. 1968), se expresó:

"La norma tuvo su evolución cuando la metafísica en lugar de la justicia era el factor determinante y obviamente tiende a derrotar las justas expectativas e intenciones de la parte que otorgó el relevo, es de notarse que con la excepción de uno, todos los ordenamientos continentales la rechazan de plano."

Con un sentido pragmático—y definitivamente más justo —la mayoría de las jurisdicciones estaduales al presente han atenuado la aplicación de esta regla, bien mediante acción legislativa o por interpretación judicial. Williston, *supra*, a la pág. 703. Algunos tribunales han acudido al uso de ficciones y distinciones sutiles para evitar su aplicación, como cuando pretenden distinguir el relevo de lo que se conoce como un convenio para no litigar (*covenant not to sue*), que por sus propios términos no es otra cosa que un relevo con una reserva de derechos. *McKenna* v. *Austin*, 134 F.2d 659 (D.C. Cir. 1943); *Western Spring Service Co.* v. *Andrew*, 229 F.2d 413 (10th Cir. 1956); Corbin, *supra*, 744; Anno: *Release of Joint Tortfeasors*, supra, 420.

■ En resumen, la tendencia actual en las jurisdicciones de derecho común de los Estados Unidos es a abandonar la aplicación estricta de esta regla, y, considerar—como es la norma bajo nuestro Código Civil—la intención de las partes como determinante en el relevo de los demás causantes comunes de un daño. Prosser, *The Law of Torts*, 272 (3ra. ed. 1964). Véase, *Release of Joint Tortfeasors as Discharging Liabilities of Others*, supra.

■ La intención de las partes es el criterio fundamental dispuesto en el Código Civil para fijar el alcance de las obligaciones contractuales. Es tan fundamental este cri-

terio de intención en la interpretación de los contratos que el Código proclama su supremacía al disponer que la intención evidente de las partes prevalecerá sobre las palabras, aun cuando éstas parecieren contrarias a aquélla. Art. 1233 Código Civil, 31 L.P.R.A. sec. 3471. La intención puede demostrarse por todos los medios; no sólo por los actos coetáneos y posteriores al contrato, según parece indicar a primera vista el Art. 1234 Código Civil, 31 L.P.R.A. sec. 3472, [7] sino también por los actos anteriores, *Hoffman* v. *Cuadrado*, 14 D.P.R. 590 (1908); así como por otras circunstancias indicativas de la voluntad de las partes. Manresa, VIII(2) *Comentarios al Código Civil Español* 500 (5ta. ed. 1950), Puig Brutau, XII(1) *Fundamentos de Derecho Civil* 301 (1954), Castán Tobeñas, III *Derecho Civil Español, Común y Foral*, 426 (9na. ed. 1958). Puig Brutau propugna juiciosamente la tesis de que el juzgador debe examinar, no sólo los actos anteriores, coetáneos o posteriores al otorgamiento del contrato, sino todas las demás circunstancias concurrentes, aunque estime que las partes se hayan expresado en términos claros. Así expresa en *Fundamentos de Derecho Civil*, supra, a la pág. 301:

"Algunas sentencias (v.g., las de 4 de febrero de 1927 y 22 de abril de 1950) afirman que este art. 1.282 tiene carácter subsidiario en relación con el anterior artículo 1.281, por lo que sólo debe recurrirse al primeramente citado si el contrato que se hubiese de interpretar ofreciese alguna duda en el sentido literal de sus cláusulas. Pero, a nuestra manera de ver, el carácter indudable de las palabras empleadas sólo resultará a consecuencia de haber sido confrontadas con cuantos elementos de valoración sean ofrecidos al juzgador. Sólo si la literalidad de las expresiones usadas no queda desvirtuada, se estará en

---

[7] El Art. 1234 dispone:

"Para juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato."

En adición a las anteriores, el Código Civil establece otras reglas hermenéuticas para la interpretación de los contratos. Véase, Arts. 1235 al 1240 Código Civil, 31 L.P.R.A. secs. 3473 a 3478.

el caso de aplicar el primer párrafo del art. 1.281. No creemos que un juzgador deba rechazar el examen de todas las circunstancias concurrentes por el hecho de estimar que las partes se han expresado en términos claros. Semejante estimación sólo estará plenamente fundada después, precisamente, de dicho examen."

■ Nuestro Código Civil, previsoramente, ofrece con el criterio de la intención de las partes una solución práctica, racional, eficaz y justa para fijar el alcance de las transacciones y relevos. Solución, que como hemos visto, ha sido ya adoptada por la mayoría de las jurisdicciones estaduales para superar la inequidad de la regla del derecho común. No era necesario, pues, acudir a normas o reglas de otras jurisdicciones, que por ineficaces han sido ya abandonadas.

Siguiendo las sabias pautas del Código Civil, procederemos a examinar la transacción celebrada por el recurrente Merle y el codeudor Foti para fijar su verdadero alcance. En virtud del convenio de transacción, el recurrente y el codemandado Foti asumieron valiosas prestaciones recíprocas, entre ellas, el desestimiento de varios pleitos entre sí. (8)

---

(8) La transacción acordada por las partes dispone en lo pertinente:

"WHEREAS, the parties have asserted certain claims against each other in connection with the aforementioned property and in connection with prior business relationship between them, which have resulted in various law suits now pending as follows:

"1. Civil Suit No. 65-2158, Superior Court of San Juan, Andrew Foti vs. Miguel Merle, etc., Foreclosure of Mortgage Thru Ordinary Proceedings, amount involved $4,000 principal, $680.00 for interests computed to July 9, 1965, plus $1,000 for attorney's fees total $5,680.00.

"2. Civil Suit No. 65-5453, Superior Court of San Juan, Miguel Merle, etc., vs. Andrew Foti, etc., Division of Community Property.

"3. Civil Suit No. 64-4271, Superior Court of San Juan, Miguel Merle vs. West Bend Co., U.S. Industries Consumer Products Corp. of Andrew Foti, Damages, amount claimed $125,000 plus $25,000 attorney's fees. There is a counter-claim for $70,930 plus $10,000 attorney's fees.

"4. Civil Suit No. 65-209, Superior Court of San Juan, Puerto Rico, Miguel Merle vs. Andrew Foti, etc., money action for $3,675 plus $500 for attorney's fees. There is the same counter-claim referred to in item 3, above.

"WHEREAS, the parties have reached an agreement to liquidate their

Expresamente acordaron desistir tanto de la demanda como de la reconvención en este caso, obligándose el recurrente, en el supuesto de que Foti fuera traído al pleito por el otro demandado, a relevarle de responsabilidad a los efectos de cualquier sentencia que pudiera recaer sobre él. A esos efectos acordaron:

"In the event that Foti is brought back into the case by action of the other co-defendants, or in the event that Foti is adjudged responsible in any manner whatsoever to Merle or to others by reason of said suit, Merle shall at all times save Foti harmless from the results of said action and, if necessary, shall waive any judgment or right the exercise of which may result in an obligation on Foti's part, so that the latter shall at all times be saved harmless from any kind of obligations, claims, or duty resulting from said civil action, as aforesaid. Foti hereby agrees to desist from the counter-claim filed by him in said civil action and Merle agrees to assist Foti in retrieving and collecting the sample sets referred to in said counter-claim."

Surge de lo anterior, que el recurrente, en virtud de las valiosas prestaciones que aparecen en el Escolio 8, transigió su reclamación contra Foti, exonerándole de toda ulterior responsabilidad, aun cuando fuera traído de nuevo al pleito por la recurrida West Bend, o en cualquier otra forma se le hiciera responsable, bien al recurrente o a cualquier otra persona por razón del pleito. Más aun, se acordó que el recurrente renunciaba a cualquier sentencia o derecho del cual pudiera emanar responsabilidad de parte de Foti.

Del texto del convenio se desprende con claridad que no había la intención de relevar a la recurrida West Bend Co., puesto que específicamente tomaron providencia para la eventualidad de que Foti pudiera ser traído de nuevo al pleito por aquélla, o en alguna forma pudiera serle responsable a aquélla. Igualmente, esta providencia indica que no contemplaron la transacción como un pago total. El pago total hubiese

---

respective claims, terminate all pending litigation and readjust their respective participation in the aforesaid real estate."

extinguido toda responsabilidad, tanto la de Foti hacia Merle como la de West Bend hacia Merle, haciendo completamente innecesario la providencia de exonerar a Foti para el caso de que éste resultara responsable a aquélla. Cuando tomaron tal providencia fue porque contemplaron que el pleito habría de continuar contra West Bend, y, que ésta podría traer a Foti para que le respondiera en contribución. Cabe preguntar aquí, ¿qué efecto tuvo la exoneración absoluta y definitiva de Foti con respecto a su responsabilidad con la recurrida West Bend, en el supuesto de que finalmente se determinara que la responsabilidad de ambos—Foti y West Bend—fuera solidaria, a tenor con la que se alega en la demanda? (9) Es claro que el convenio de transacción entre el recurrente Merle y Foti, no puede perjudicar la responsabilidad que éste pudiese tener con West Bend, repetimos, en caso de que la responsabilidad de ambos con Merle resultara ser solidaria. El texto tan absoluto y definitivo de la exoneración— ". . . in the event that Foti is adjudged responsible *in any manner whatsoever* to Merle or to others by reason of said suit, *Merle shall at all times save Foti harmless from the results of said action . . .*" (Énfasis nuestro.)—parece indicar la intención de Merle asumir el peso de cualquier responsabilidad que Foti pudiera tener con West Bend como consecuencia de este pleito. Corresponde, sin embargo, al tribunal de instancia, luego de ventilada la prueba, fijar la

(9) Las partes dedican grandes esfuerzos en sus alegatos a discutir el carácter de la responsabilidad de Foti y de West Bend, si mancomunada o solidaria. No es necesario detenernos a considerar esta cuestión en vista de que, en uno u otro caso, en nada se alteraría la conclusión a que hemos llegado: que la transacción acordada por la recurrente y Foti no releva a West Bend. Si mancomunada, por razón de la propia naturaleza de estas obligaciones en las que existen multiplicidad de vínculos, y, por lo tanto, la transacción o relevo de uno de los deudores mancomunados sólo extingue el vínculo de éste sin afectar en forma alguna la responsabilidad de los demás deudores mancomunados. Arts. 1090 y 1091 Código Civil, 31 L.P.R.A. secs. 3101–3102. Si solidaria, por lo que hemos expuesto anteriormente.

consecuencia y alcance del convenio de transacción con respecto a West Bend.

En resumen, concluimos que el convenio de transacción celebrado entre el recurrente y Foti no tuvo el efecto de relevar totalmente a West Bend y que, por tanto, incidió el tribunal de instancia al desestimar la demanda contra ésta por razón del relevo.

*Por lo anteriormente expuesto, se revoca la sentencia que dictó el Tribunal Superior de Puerto Rico, Sala de San Juan, con fecha 27 de noviembre de 1967, y se devolverá el caso a dicho Tribunal para ulteriores procedimientos consistentes con esta opinión.*