*868 TEXTO COMPLETO DE LA SENTENCIA
En el caso de epígrafe, el Sr. losé M. García Bermúdez, codemandado y peticionario, comparece ante nos mediante un recurso de Certiorari solicitando la revocación de una Resolución dictada el 14 de junio de 2006 por el Tribunal de Primera Instancia, Sala Superior de Bayamón en San Juan. En dicha Resolución, el tribunal sentenciador,declaró No Ha Lugar una moción que solicitaba reconsiderar la denegatoria de una solicitud de sentencia sumaria presentada por la demandada-peticionaria.
Por los fundamentos esbozados a continuación, EXPEDIMOS el auto solicitado y CONFIRMAMOS la Resolución .recurrida.
I
Universal Insurance Company, en adelante la recurrida, presentó una demanda contra Fast Track, S.E., et al., entre quienes se encuentra la parte peticionaria el Sr. José M. García Bermúdez, alegando que éstos le habían solicitado una fianza para garantizar el trabajo y los materiales utilizados en el proyecto Estación Patrulla de Tránsito y Depósito de Vehículos Hurtados, Bayamón, Puerto Rico, Subasta AEP 3112 y que en garantía de la fianza habían suscrito un acuerdo de indemnización en el cual se comprometieron solidariamente a indemnizar a la recurrida por cualquier suma que ésta viniese obligada a pagar por concepto de las fianzas expedidas. Señala la recurrida que a tenor con el contrato de fianza, eventualmente pagó la cantidad de $255,333.94 a diferentes personas y entidades a las cuales los demandados adeudaban sumas de dinero relacionadas con el proyecto objeto de la fianza. Con posterioridad, la recurrida presentó una segunda demanda enmendada en la que alegaba que la cantidad pagada relacionada al proyecto afianzado ascendía a $705,035.08 y solicitaba que se condenara a los demandados al pago solidario de dicha suma, más los intereses, costas y honorarios de abogado.
Durante el trámite de su reclamación, la recurrida y los codemandados Ignacio J. Martínez Villamil, Aida M. Quiñones y la Sociedad Legal de Bienes Gananciales compuesta por ambos, presentaron una Estipulación de Transacción Parcial. En dicha transacción, Martínez Villamil consintió a que se dictase sentencia parcial en su contra por la suma de $200,000.00, acordándose que la recurrida se abstendría de ejecutar dicha sentencia en consideración al pago de la suma de $20,000.00 por parte de Martínez Villamil. El tribunal a quo dictó sentencia por estipulación parcial, aprobando los referidos acuerdos presentados por las partes.
Luego de un sinnúmero de trámites procesales, el Sr. José M. García Bermúdez, codemandado y peticionario, presentó una solicitud de sentencia sumaria. Sostuvo que el 5 de abril de 2004, la parte recurrida suscribió con el codemandado Martínez Villamil una estipulación adoptada por sentencia parcial en la que se relevaba de toda responsabilidad a esa parte codemandada. Añadió que la parte peticionaria y el codemandado *869 Martínez Villamil habían suscrito un Contrato de Subcontratación el 23 de julio de 1996, en el cual se le relevó al peticionario de toda responsabilidad respecto el proyecto Estación Patrulla de Tránsito y Depósito de Vehículos Hurtados. Concluyó que como la recurrida relevó a Martínez Villamil mediante la Estipulación de Sentencia Parcial y como, a su vez, éste relevó al peticionario en el Contrato de Subcontratación, la parte recurrida estaba impedida de seguir la causa de acción en su contra. Solicitó que se dictara una sentencia sumaria que desestimara la demanda.
El tribunal sentenciador dictó resolución en la que declaró No Ha Lugar la solicitud de sentencia sumaria. Ante una Moción Solicitando Reconsideración y/o Aclaración de Resolución, presentada por el peticionario, el tribunal de instancia la declaró No Ha Lugar y resolvió que de la Estipulación de Transacción entre la recurrida y el Sr. Martínez Villamil no surgía la intención de que la recurrida asumiera la responsabilidad de ese codemandado frente al derecho de nivelación del peticionario. Es de dicha resolución que se recurre ante nos a través de un recurso de Certiorari en el que se presentan tres señalamientos de error, a saber:
1.Erró el Tribunal de Primera Instancia en la aplicación del derecho y las doctrinas establecidas por el Tribunal Supremo en los casos Szendrey v. Hospicare, Inc., 2003 J.T.S. 25, y Merle v. West Bend, 97 D.P.R. 403, al no reconocer los efectos de dos relevos absolutos, uno entre deudores solidarios sobre cierta reclamación, y otro posterior y en conocimiento entre el demandante y el deudor solidario que relevó totalmente al otro.

2. Erró el Tribunal de Primera Instancia, al no reconocer el derecho a nivelación total de un deudor solidario frente al otro que lo relevó totalmente de responsabilidad, y la imposibilidad del demandante de cobrarle al primero por haber relevado totalmente al segundo.

3. Erró el Tribunal de Primera Instancia al llegar a determinar la intención de las partes en un contrato en contra de la propia ley clara del (los) documento(s), y al hacerlo de forma sumaria sin vista y sin escuchar a una de las partes contratantes, llegando a un resultado totalmente absurdo en su aplicación.

Por estar íntimamente relacionados los errores señalados, se discutirán a continuación conjuntamente.
II
El contrato existe desde que una o varias personas consienten en obligarse a dar alguna cosa, o prestar algún servicio. Art. 1206 del Código Civil, 31 L.P.R.A. see. 3371. Las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstos no sean contrarios a las leyes, a la moral, ni al orden público. Art. 1207 del Código Civil, 31 L.P.R.A. see. 3372. Los contratos sólo producen efecto entre las partes otorgantes y sus herederos; salvo en cuanto a éstos, el caso en que los derechos y obligaciones que proceden del contrato no sean transmisibles, o por su naturaleza, o por pacto, o por disposición de la ley. Art. 1209 del Código Civil, 31 L.P.R.A. see. 3374.
La transacción es un contrato en el cual las partes, a través de concesiones recíprocas, evitan la provocación de un pleito o ponen fin a uno ya comenzado. Art. 1709 del Código Civil, 31 L.P.R.A. see. 4821. Nuestro Código Civil establece los parámetros que deben guiar nuestra interpretación cuando nos corresponde determinar el alcance de una transacción. Éste preceptúa:

“La transacción no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma.

La renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre [la] que ha recaído la transacción. ”

*870 Véase, Art. 1714 del Código Civil, 31 L.P.R.A. sec. 4826.
Conforme a la disposición antes citada y por su naturaleza jurídica, el contrato de transacción debe ser interpretado de forma restrictiva. López v. Maldonado, res. el 8 de septiembre de 2006, 2006 J.T.S. 152, 168 D.P.R. _.
Cuando los términos de un contrato son claros y no dejan dudas sobre la intención de las partes contratantes, se está al sentido literal de sus términos. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471; López Castro v. Atlantic Southern Insurance Co., res. el 11 de febrero de 2003, 2003 J.T.S. 14, 158 D.P.R. _. Los tribunales no deben hacer una interpretación de un contrato que quite efectividad a las cláusulas contractuales válidamente acordadas. Caguas Plumbing, Inc. v. Continental Const. Corp., 155 D.P.R. 744 (2001). Por tanto, al interpretar un contrato se debe presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo para que sus resultados sean conformes a la relación contractual y las normas éticas. En otras palabras, no se puede buscar la oscuridad, ni tergiversar la interpretación de los contratos para llegar a resultados absurdos o injustos. Irizarry López v. García Cámara, 155 D.P.R. 713 (2001).
Al momento de determinar la intención de las partes contratantes, se deben considerar los actos anteriores, coetáneos y posteriores al otorgamiento del contrato. Art. 1234 del Código Civil, 31 L.P.R.A. see. 3472; Ramírez Senegal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 174 (1989).
En nuestro ordenamiento jurídico, un acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos simultáneamente. Artículo 1097 Código Civil, 31 L.P.R.A. see. 3108. Las reclamaciones entabladas contra uno de los deudores solidarios no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no resulte cobrada por completo la deuda, supra.
De un análisis de los autos, nos percatamos que la transacción parcial habida en el caso está predicada en la jurisprudencia establecida por Merle v. West Bend, 97 D.P.R. 403 (1969). En ese caso el Tribunal Supremo resolvió que el convenio de transacción celebrado entre el acreedor y uno de los codeudores solidarios, no tuvo el efecto de relevar de responsabilidad a otro codeudor solidario, por lo que no procedía la desestimación de la demanda contra ese último, supra.
La intención de las partes respecto al relevo es el criterio fundamental que debe regir para determinar el alcance de las obligaciones contractuales. Merle v. West Bend, supra. La disposición anterior coincide con la supremacía de la intención de los contratantes sobre las palabras, cuando ambas parezcan contrarias. Art. 1233 del Código Civil, 31 L.P.R.A. 3471.
En referencia al caso de Merle v. West Bend, supra, se ha expresado que la quita o remisión de un deudor solidario, sin la intención de extinguir toda la obligación, ni liberar al resto de los codeudores de su responsabilidad, no puede tener el efecto de privar al codeudor que se vea obligado a pagar toda la deuda, del derecho de nivelación frente al condonado. J. Vélez Torres, Derecho de Obligaciones, 2da Edición, Facultad de Derecho Universidad Interamericana, 1997, pág. 92. La quita o remisión hecha por un acreedor que afecte a uno de los deudores solidarios no libra a éste de su responsabilidad frente a los codeudores en caso de que la deuda haya sido pagada por cualquiera de ellos. Art. 1099 del Código Civil, 31 L.P.R.A. see. 3110. Analizando Merle v. West Bend, supra, se ha señalado que el efecto inmediato de la condonación individual fue la reducción de la deuda solidaria en la porción correspondiente al deudor condonado, porque un acreedor no puede afectar con sus actos los derechos de los codeudores en su relación interna. J. Vélez Torres, Derecho de Obligaciones, ibid. En Merle v. West Bend, supra, al condonar a uno de los deudores solidarios, el acreedor asumió la reducción de la deuda hasta la parte que al condonado correspondía en la nivelación interna frente a su codeudor. J. Vélez Torres, Derecho de Obligaciones, ibid.
*871 Contrario al caso de marras, en Merle v. West Bend, supra, se señaló que la transacción en la cual se relevó a uno de los codeudores solidarios tenía como intención de la parte demandante, el asumir el peso de cualquier responsabilidad que el codemandado relevado pudiera tener con el codemandado no relevado como consecuencia del pleito. Se basó tal determinación en el lenguaje categórico de la exoneración comprendido en la transacción y en las contraprestaciones realizadas por las partes. Merle v. West Bend, supra.
Otro de los casos citados por el peticionario en apoyo de sus contenciones es Szendrey v. Hospicare, Inc., res. el 14 de febrero de 2003, 2003 J.T.S. 25, 158 D.P.R. _. El mismo trataba de una reclamación de cumplimiento específico de contrato y daños y perjuicios. Realizado un convenio de transacción entre la parte demandante y uno de los cocausantes del daño, se incluyó una reserva del derecho a proseguir las reclamaciones en contra de los demás codemandados. De un análisis del relevo expreso que tuvo lugar entre las partes, el Tribunal Supremo concluyó la voluntad inequívoca de los demandantes de relevar a una de las codemandadas de toda responsabilidad procedente de los hechos relativos al incumplimiento de contrato, a los daños y perjuicios reclamados y al cumplimiento específico. Szendrey v. Hospicare, Inc., supra.
Distinto al caso que nos concierne, en Szendrey v. Hospicare, supra, de la Estipulación de Transacción y Relevo surgía la reserva de derecho de la demandante de proseguir su causa de acción en contra de los codemandados no relevados. Aún así, en el referido caso se alude a los múltiples pronunciamientos de derecho realizados por el Tribunal Supremo con anterioridad, que establecen lo siguiente:
“El relevo o descargo de responsabilidad hecho por un demandante a favor de un codemandado y codeudor solidario, no releva de responsabilidad a los demás causantes comunes del daño, cuando la intención de las partes en el acuerdo de desistimiento así lo reconoce. P.R. Fuels, Inc. v. Empire Gas Co., Inc., res. el 2 de noviembre de 1999, 99 JTS 171; Merle v. West Bend Co., 97 D.P.R. 403 (1969).”

“Determinamos que los cocausantes de un daño no quedaban relevados de responsabilidad en el caso en que esa no sea la intención de las partes en el convenio de transacción. Merle, supra, en la pág. 412.”

Véase, Szendrey v. Hospicare, supra.
Aunque en la interpretación de los contratos debe partirse de la expresión contenida en sus palabras, el juzgador no puede detenerse en su sentido literal, sino que debe indagar en la intención de las partes, el espíritu y la finalidad que han perseguido éstas con el negocio, infiriéndose de la conducta total de los interesados y de las circunstancias concurrentes que puedan contribuir a la acertada investigación de la voluntad de los otorgantes. Marcial v. Tomé, 144 D.P.R. 522 (1997). En nuestra jurisdicción rige la teoría de la subjetividad en la interpretación de los contratos, la cual entraña el indagar cuál fue la voluntad real de las partes con el propósito de que ésta prevalezca. Unisys v. Ramallo Brothers, 128 D.P.R. 842, 852 (1991).
III
En el presente caso, el acreedor presentó una demanda en contra de todos sus deudores solidarios. Posteriormente, aceptó un pago parcial de su reclamación mediante una transacción realizada con uno de sus deudores solidarios, sin dar indicio alguno de que la misma finalizaría el pleito contra el resto de los codeudores solidarios. Todo lo contrario, las acciones del acreedor demostraron su intención de proseguir el trámite judicial correspondiente contra el resto de los demandados, incluyendo el peticionario.
El codemandado-peticionario predica su petición de Certiorari en el hecho de que la recurrida relevó al Sr. Martínez Villamil, uno de los codeudores solidarios, mediante una Estipulación de Transacción Parcial de la cual no surge expresamente una reserva de derecho para continuar con la acción presentada en su contra. *872 Además, alega que al haber suscrito el llamado Contrato de Subcontratación con Martínez Villamil, en el cual éste se hacía cargo del proyecto afianzado por la recurrida, el relevo efectuado entre Martínez Villamil y la recurrida efectivamente libró al peticionario de toda responsabilidad. No le asiste la razón.
El Contrato de Subcontratación se otorgó entre Fast Track, S.E., representada por el Sr. García Bermudez y MV Contractors, Inc., representada por el Sr. Martínez Villamil. Véase, Apéndice 4, página 19, peticionario. Las partes contratantes son dos entidades jurídicas las cuales poseen una personalidad distinta y separada a la de sus representantes. Aún así, del Acuerdo de Subcontratación surgen ciertas disposiciones referentes a Fast Track, S.E., sus empleados, directores, agentes, accionistas y oficiales. Véase, Apéndice 4, página 19, Artículo 4, peticionario.
De los autos surge que la parte recurrida no fue parte, ni participó del Contrato de Subcontratación. Más aún, la parte peticionaria tampoco fue parte, ni participó de la Estipulación de Transacción entre la recurrida y el codemandado liberado. No cabe duda de que el Contrato de Subcontratación y la Estipulación de Transacción son dos acuerdos distintos, entre partes diferentes. No es razonable determinar que la parte recurrida estaba transigiendo sus reclamaciones con todos los codemandados conforme se deduce del contenido de la Estipulación de Transacción y las partes entre las cuales fue otorgada.
De la Estipulación de Transacción surge la intención de las partes contratantes de concluir la litigación exclusivamente en cuanto al codemandado Martínez Villamil, su esposa y la Sociedad Legal de Gananciales compuesta por ellos. Véase, Apéndice 12, páginas 110-112, peticionario. Incluso, se hace referencia a la naturaleza parcial de la sentencia a dictarse en conformidad. Véase, Apéndice 12, página 112, inciso 6, peticionario. Por existir una demanda instada en contra de otros codemandados, los cuales no formaban parte del Acuerdo de Transacción, no procede concluir que dicho acuerdo les relevaría a todos del pleito en su contra, por no incluir expresamente una reserva de derecho al respecto. Las disposiciones comprendidas en el Contrato de Transacción entre la recurrida y Martínez Villamil sólo son aplicables a las partes allí contratantes, lo cual se demuestra según sus actos anteriores, coetáneos y posteriores.
El tribunal sentenciador determinó que la recurrida no tuvo la intención de asumir la responsabilidad que el Sr. Martínez Villamil pudiera tener frente a la demanda contra co-parte. Véase, Apéndice 1, página 6, peticionario. Esa determinación de instancia se debió en parte al lenguaje utilizado en la Estipulación de Transacción entre la recurrida y Martínez Villamil. La catalogación hecha de la transacción como parcial fue interpretada por el foro sentenciador como el fin únicamente de la reclamación incoada contra Martínez Villamil. No entendió el tribunal que la recurrida estuviera asumiendo la responsabilidad de éste frente al codemandado-peticionario, en cuyo caso la consecuencia sería la finalización del pleito. Coincidimos con la determinación del Tribunal de Primera Instancia.
De la totalidad de la Estipulación de Transacción Parcial efectuada en el presente caso, surge la clara intención de la parte recurrida de no transigir las reclamaciones con todos los demandados y supuestos codeudores solidarios, sino únicamente con el Sr. Martínez Villamil. Véase, Apéndice 12, páginas 110-116, peticionario. Más aún, como bien señala el foro sentenciador, la solicitud de anotación de rebeldía por incomparecencia en contra de la parte peticionaria tan sólo días después de otorgada la Estipulación de Transacción Parcial, demuestra la clara intención de la recurrida en proseguir sus reclamaciones en contra de ese codemandado. Véase, Apéndice 1, página 8, peticionario.
Aunque expresamente no surge de la Estipulación de Transacción Parcial una reserva de derecho de la parte recurrida que indicara sus intenciones de proseguir la causa de acción en contra de los demás demandados, por la totalidad de su contenido no albergamos dudas al respecto. Incluso de los autos surge, según un recuento de algunos incidentes procesales por la parte recurrida, que luego de aceptada la Estipulación de Transacción Parcial y dictada sentencia final parcial de conformidad, ordenado su registro y notificación a tenor con la Regla *873 43.5 de Procedimiento Civil, el caso continuó en oposición a los otros codemandados que no habían participado de la estipulación. Véase, Alegato del Recurrido, página 11. Incluso, con posterioridad, se dictó una sentencia en rebeldía en contra de la parte peticionaria, la cual se dejó sin efecto luego de que ésta compareciera y presentara sus argumentos. Véase, Alegato del Recurrido, página 11. Estas acciones son demostrativas de la clara intención de la recurrida de continuar su causa de acción en contra de los demás demandados, refirmando la intención que quedó plasmada en la totalidad de su transacción con el codemandado relevado.
Por otra parte, respecto al Contrato de Subcontratación entre las entidades MV Contractors, Inc. y Fast Track, S.E. representada por el peticionario, en el mismo ni la recurrida fue parte, ni el Sr. Martínez Villamil en su carácter personal. Tampoco puede este acuerdo prevalecer ante las disposiciones del Código Civil que establecen que un acreedor puede dirigirse contra cualquiera de sus codeudores solidarios o contra todos simultáneamente y que las reclamaciones en contra de uno no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no se cobre la deuda completa. Art. 1097 del Código Civil, 31 L.P.R.A. sec. 3108.
No se pueden reconocer los efectos de los dos relevos discutidos como pretende la parte peticionaria porque los mismos tuvieron lugar entre partes diferentes. La recurrida no fue parte del Contrato de Subcontratación por lo cual no relevó al peticionario en dicho acuerdo de sus obligaciones solidarias para con la misma. El Sr. Martínez Villamil no pudo relevar al peticionario en el Contrato de Subcontratación, porque tampoco era parte del mismo, sino que fungía como representante de MV Contractors, Inc., entidad jurídica distinta y separada. Fue precisamente MV Contractors, Inc. quien contrató con Fast Track, S.E., sociedad especial representada por la parte peticionaria como su socio administrador.
Del Agreement of Indemnity surge la acreencia solidaria bajo la cual la parte recurrida presentó su demanda en el caso de autos. Véase, Apéndice 3, páginas 15-18, peticionario. El mismo fue suscrito por Fast Track, S.E. como principal, Ignacio J. Martínez Villamil, Aida M. Quiñones, José María García Bermudez, Nuria Castro Ponce, y Universal como acreedor. Véase, Apéndice 3, página 17, peticionario. Por su parte, el contrato de Subcontratación tuvo lugar con posterioridad al Agreement of Indemnity. Para que del Acuerdo de Subcontratación se pudiese liberar a los deudores solidarios de la parte recurrida, ésta tenía que ser parte del mismo, lo cual no ocurrió. Por tanto, MV Contractors Inc. no cuenta con la legitimación necesaria para liberar a los deudores solidarios de la recurrida.
No erró el foro de instancia al determinar la intención de las partes en contra de la letra clara del (los) documento(s) como aduce el peticionario. De los autos surge la clara intención de pactar en la Estipulación que la misma era vinculante entre la acreedora y los demandados Ignacio J. Martínez Villamil, Aida M. Quiñones y la Sociedad Legal de Gananciales por ellos compuesta. Nada sugiere que tuviera efectos para con alguno de los otros deudores solidarios que no fueron parte del contrato, mucho menos que se les relevara a los mismos.
No podemos olvidar que es norma jurídica firmemente establecida que los tribunales apelativos no deben sustituir su criterio por el del tribunal sentenciador, salvo que se demuestre que dicho foro actuó con prejuicio o parcialidad, incurrió en arbitrariedad o abuso de discreción o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. Lluch v. España Services Sta., 117 D.P.R. 729, 745 (1986). De los autos no surge prueba que acredite que el tribunal sentenciador actuó con pasión, prejuicio, parcialidad, error manifiesto, arbitrariedad, abuso de discreción, error en la interpretación o aplicación de las normas jurídicas pertinentes, por lo que éste foro no intervendrá con la Resolución recurrida.
IV
Por todo lo anteriormente expuesto, EXPEDIMOS el auto de Certiorari y CONFIRMAMOS la Resolución recurrida.
*874 Lo acuerda y manda este Tribunal y lo certifica la Secretaria.
Mildred I. Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones