# United States Court of Appeals

## For the First Circuit

No. 07-2699

RUTH VERNET; FRANK VERNET; CONJUGAL PARTNERSHIP
VERNET-VERNET; ALEXANDER VERNET; DAVID VERNET,

Plaintiffs, Appellants,

v.

JOSÉ SERRANO-TORRES; COOPERATIVA DE SEGUROS MÚLTIPLES;
FORD MOTOR COMPANY; BLUE WATER PALMAS, LTD.,

Defendants,

ICN PHARMACEUTICALS DUTCH HOLDINGS B.V.

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Stahl, and Howard,
Circuit Judges.

Jorge M. Suro-Ballester, for appellants.
Luis G. Martínez-Lloréns, with whom Luis Martínez Lloréns Law
Offices, P.S.C., was on brief for appellee.

May 21, 2009

**TORRUELLA**, <u>Circuit Judge</u>.  This action arises from a car accident that occurred after a Christmas party held by defendant-appellee ICN Pharmaceuticals ("ICN") for its employees.  The party was held at Palmas del Mar resort complex ("Blue Water Palmas").  José Serrano Torres ("Serrano"), an employee of ICN, allegedly left the party legally drunk and crashed into plaintiff-appellant Ruth Vernet's vehicle in a residential area in Palmas del Mar.  Plaintiff-appellants[1] ("plaintiffs") claim that under Articles 1802 and 1803 of the Civil Code of Puerto Rico, ICN is liable for the physical and economic injuries that she suffered as a result of the car accident.[2]  ICN moved to dismiss the complaint and the district

---

[1]  Plaintiff-Appellants include the victim, Ruth Vernet; her spouse, Frank Vernet; and her two sons, Alexander Vernet and David Vernet.

[2]  Article 1802 of the Puerto Rico Civil Code states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141.

Article 1803 of the Puerto Rico Civil Code states:

> The obligation imposed by [Article 1802] is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible. . . . Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties. . . . The liability referred to in this section shall cease when the liable persons mentioned therein prove that they employed all the diligence of a good father of a family to preclude the damage.

P.R. Laws Ann. tit. 31 § 5142.

court granted ICN's motion.  It relied on the Supreme Court of Puerto Rico's decision in López v. Porrata Doria to dismiss the plaintiffs' Article 1802 claim.  See 2006 TSPR 149, 2006 WL 2873349 (P.R. 2006) (certified translation provided by parties).  The district court dismissed plaintiffs' Article 1803 claim by concluding that Serrano was not acting within the scope of his employment when the accident occurred.

After careful consideration we affirm the district court's ruling with respect to plaintiffs' Article 1802 claim, but reverse and remand to the district court with respect to plaintiffs' Article 1803 claim.

## I.  Background

In their second amended complaint, plaintiffs allege the following facts relevant to the instant case.  On the afternoon of December 17, 1999, ICN sponsored a Christmas party held at Blue Water Palmas in Humacao, Puerto Rico.  Plaintiffs maintain that one of ICN's objectives in having the party was "to develop and enhance ICN's business relationship with clients and others."  Plaintiffs point out that although ICN decided that alcohol would be served at the party, the company failed to "circulate to its employees a written memorandum instructing them not to drink alcohol in excess."  Further, plaintiffs claim that ICN "did not create a committee among its employees to be on the lookout during the party

-3-

for its employees and other attendees that might be having too much to drink."

Serrano, an employee of ICN, drank liquor provided by ICN at the party. He left the party that afternoon intoxicated and proceeded to drive his vehicle. As a result of his condition, which was beyond the legal limit permissible to drive a vehicle, Serrano's automobile struck a car driven by Vernet, causing her multiple physical and economic injuries. An officer present at the scene after the accident concluded that Serrano caused the accident.

Plaintiffs brought suit against ICN, as well as other defendants,[3] claiming that ICN was negligent in failing to control its employees' alcohol consumption at the company activity, and in not foreseeing that Serrano's condition could endanger third parties such as Vernet. Specifically, plaintiffs claimed that from

---

[3] Other defendants included Serrano, his insurance company, Ford Motor Company, and Blue Water Palmas. On March 7, 2001, plaintiffs filed a Notice of Voluntary Dismissal as to Ford Motor Company. On March 22, 2001 the district court entered judgment, dismissing the complaint without prejudice as to Ford Motor Company. On April 3, 2002, plaintiffs, Serrano, and Serrano's insurance company filed a settlement stipulation. On April 25, 2002, the district court entered a partial judgment, dismissing with prejudice plaintiffs' claim against Serrano and his insurance company. On September 25, 2006 Blue Water Palmas and plaintiffs filed a settlement agreement in the amount of $300,000 for their alleged liability in having served Serrano excessive amounts of liquor during the course of the ICN company party. On October 3, 2006 the district court entered partial judgment, dismissing with prejudice plaintiffs' claim against Blue Water Palmas. Consequently, the only remaining parties are the plaintiffs and ICN.

the facts alleged in the second amended complaint, ICN was liable under Article 1802 for failing to implement reasonable measures to control the amount of alcohol available to its employees during a work-related activity and to control the behavior of its employees during a work-related activity. Also, plaintiffs claimed that ICN was liable under Article 1803 due to the fact that Serrano, its employee, became intoxicated at and during the course of his employment with alcoholic beverages provided by and paid for by his employer.

ICN responded to plaintiffs' claims by filing a second motion to dismiss. As to plaintiffs' Article 1802 claim, ICN contended that in López, the Puerto Rico Supreme Court recognized limited dram-shop liability applicable only to commercial establishments in the business of selling alcoholic beverages.[4] Furthermore, ICN argued that even if López were applicable to business hosts such as itself, the Puerto Rico Supreme Court explicitly ruled that its decision would only have prospective effects. Thus, because López was issued after Serrano's car accident, ICN asserted that it should not face liability.

---

[4] We have previously described the theory of dram-shop liability as one where "a bar or tavern may be liable for the wrongful or injurious actions of a patron if it served alcohol to that patron after it knew, or should have known, that the patron was already intoxicated." Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 n.2 (1st Cir. 2007) (referring to dram-shop liability under Massachusetts law). Puerto Rico does not have a dram-shop statute.

Regarding plaintiffs' Article 1803 claim, ICN argued that plaintiffs' settlement with Serrano legally extinguished any possible vicarious liability on the part of ICN because any such liability was contingent upon the existence of Serrano's primary liability, which no longer existed by virtue of the settlement. ICN further argued that plaintiffs' claim under Article 1803 would nevertheless fail on the merits because Serrano was not acting within the scope of his employment when the accident occurred.

The district court ruled in favor of ICN and dismissed the complaint. Plaintiffs appeal the district court's ruling.

## II. Discussion

### A. Standard of Review

We apply de novo review to a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Díaz Ramos v. Hyundai Motor Co., 501 F.3d 12, 15 (1st Cir. 2007). "[W]e, like the district court, must assume the truth of all well-plead facts and give the plaintiff[s] the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). In this respect, to survive a motion to dismiss, a complaint must establish "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).

-6-

**B.  Applicable Law**

In diversity cases, such as the present one, state law controls the substantive outcome.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Univ. Emergency Med. Found. v. Rapier Invs., Ltd., 197 F.3d 18, 19 n.1 (1st Cir. 1999).  In dismissing the complaint against ICN, the district court correctly ruled that the substantive law of Puerto Rico favors ICN with respect to plaintiffs' Article 1802 claim.  However, we disagree with the district court's ruling regarding plaintiffs' Article 1803 claim.

### 1.  Article 1802 and López

A brief review of López supports our conclusion that the district court acted correctly in dismissing plaintiffs' Article 1802 claim.  See generally López, Certified Translation.[5]  López involved an action against a commercial establishment pursuant to Puerto Rico's negligence statute, contained in Article 1802 of the Civil Code.  Id. at **1-2.  In López, Ricardo Calderón and Rafael Lugo-Porrata met some friends at a local bar.  Id. at *3.  Allegedly, Lugo-Porrata, even though he was visibly intoxicated, was served alcoholic beverages at a pub.  See id. at **3, 5.  Later that evening, both Calderón and Lugo-Porrata left the bar and decided to go drag racing, during which Lugo-Porrata, the driver, lost control of the vehicle and crashed.  Id. at *4.  As a result

---

[5]  There does not appear to be an official translation.  However, the parties cite to an undisputed certified translation, which we cite to as well.

of the crash, Lugo-Porrata was killed and Calderón was severely injured.  Id.  Calderón and his parents sued the bar claiming that it was negligent in serving Lugo-Porrata alcohol when he was visibly intoxicated and its employee knew or should have known that he was going to drive a car.  Id. at **4-5.

The specific issue before the court was whether, pursuant to Article 1802, a commercial establishment could be held liable "for supplying alcoholic beverages to a person that is visibly intoxicated and who afterward causes damages while driving an automobile under the influence of alcohol."  Id. at **1-2.  The court concluded that commercial establishments could be held liable, yet stressed that its ruling would only have "prospective effects."  Id. at *2.  In its analysis, the López court stated that despite public policy pronouncements acknowledging the dangers posed by intoxicated drivers, no specific legislation dealt with the controversy in that case.  Thus, the court reasoned that it must apply general Puerto Rico tort law principles under Article 1802, noting that the provisions of Article 1802 "must be interpreted expansively."  Id. at *7 (emphasis in original).

To "enrich [its] analysis," id. at *16, the court turned to comparative law sources in common law jurisdictions in the United States which have faced similar situations.  In looking at jurisdictions in the United States, the court remarked that several courts were now "imposing liability [on] those who sold alcoholic

beverages to intoxicated . . . persons who subsequently caused injury." Id. at *17 (emphasis in original deleted). The court then pointed to dram-shop legislation in the United States directed at public commercial establishments, especially bars and restaurants. Id. at **19 & n.8. The court stated that many of these laws were passed in part to incentivize commercial vendors of alcoholic beverages to behave responsibly. Id. at *19.

In view of these decisions and its prior case law, the court reasoned that those who irresponsibly sell alcoholic beverages with knowledge of the risk it creates "violate[] the general duty of correctness and prudence" and do so "in clear disregard of the safety of others." Id. at *26. The court further noted that "the granting of a license is a privilege, not a right" and that "[w]hoever profits from an activity that puts at risk the health and life of individuals has the obligation to act prudently and diligently." Id.

The court thus concluded that under Article 1802 it was "clearly appropriate" to impose liability on commercial vendors who provide alcoholic beverages to "visibly intoxicated" individuals who then cause harm to third parties by driving a vehicle while intoxicated. Id. at *27. The court emphasized that "this duty of diligence when providing alcoholic beverages is only extended to public commercial establishments engaged in the sale of alcoholic beverages." Id. (emphasis in original). The court reasoned that

-9-

commercial establishments should be singled out because unlike social hosts, for example, commercial vendors "economically profit[] from furnishing alcohol and, therefore, ha[ve] an incentive to encourage excess consumption." Id. Further, commercial establishments can procure insurance "against the risks assumed in getting [a business] up and running." Id. at *28. These factors, the court concluded, support limiting the duty of diligence to commercial sellers of alcoholic beverages. Id.

### a. Whether López Controls

Plaintiffs argue that López does not determine the outcome of this case. They maintain that López limited its ruling to commercial establishments and that we are presented with a different factual scenario here, emphasizing that there was an employee-employer relationship between ICN and Serrano.[6]

We disagree and hold that López controls here. Simply put, López does not contemplate extending liability to business hosts like ICN. Moreover, under López, plaintiffs' Article 1802

---

[6] Plaintiffs stress in their brief that "[o]ne of the principal purposes of ICN in having the party during working hours, on a work day, and where employee-attendance was mandatory was to foment and preserve a good relationship between management and regular employees, as well as between regular employees." Plaintiffs also claim that during the planning phase of the party, ICN budgeted for and took as a business expense the cost of providing alcoholic beverages. Further, plaintiffs allege that prior to the day of the party, ICN neither circulated a memorandum among its employees instructing them to refrain from drinking excessively so as to not jeopardize the well being of third persons during or after the party; nor did ICN create a committee to watch over employees so that they would not drink excessively.

-10-

claims would not be cognizable because the court made clear that its decision was to be applied only prospectively.

With respect to López's controlling effect, López did more than just comment on the liability surrounding social hosts and commercial vendors. Rather, the López court, in reaching its decision, reviewed both the principles underlying Article 1802 and the various approaches courts throughout the United States have taken historically towards dram-shop liability. After this comprehensive review, which included a case involving a business host, see McGee v. Alexander, 2001 OK 78 (2001), the López court concluded that "the duty of diligence when providing alcoholic beverages is only extended to public commercial establishments engaged in the sale of alcoholic beverages." López, Certified Translation at *27 (emphasis in original). Although plaintiffs characterize the court's holding as a narrow one, the court's analysis instead suggests that it was opining on the larger question of when liability extends to someone who has provided alcohol to an intoxicated person who then causes harm to a third party. It is clear from our reading of López that the Puerto Rico Supreme Court did not contemplate that dram-shop liability would extend to business hosts like ICN.

Even if we were to conclude that ICN should be treated like a commercial vendor under López, plaintiffs' claims would still fail. The López court explicitly stated that its ruling was

-11-

to apply prospectively from October 6, 2006, the date of its decision. Plaintiffs' action would have arisen, had they otherwise qualified, seven years before the operative date.

## 2. Article 1803

As a preliminary matter, we must determine whether, under Puerto Rico law, plaintiffs' claims were extinguished by their settlement with Serrano. "[T]he default rule under Puerto Rico law . . . recognizes the settling parties' intent as controlling." Río Mar Assocs., LP v. UHS of P.R., Inc., 522 F.3d 159, 166 (1st Cir. 2008) (citing Szendrey v. Hospicare, Inc., 158 D.P.R. 648, 657-58, 2003 WL 751582 (P.R. 2003)). Plaintiffs' settlement agreement provides as follows: "Notwithstanding, plaintiffs expressly reserve the right to continue prosecuting their causes of actions against codefendants [ICN , Blue Water Palmas], their insurance companies and any other person or entity who might be liable to them, all in accordance with Merle v. West Bend, Co., 97 D.P.R. 403, [1969 WL 21616 (P.R. 1969)]." From this language it is evident that plaintiffs did not intend for the settlement agreement with Serrano to extinguish their claims against ICN under either Articles 1802 or 1803. See Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 106 (D.P.R. 1993) (noting the Merle court's conclusion that "[t]he clear terms of the settlement agreement reflected the intention of the parties at the time they entered into the contract

-12-

and controlled the outcome of the case").[7]  We are not aware of, and ICN has not cited to, a case under Puerto Rico law that holds that a plaintiff's settlement with an employee extinguishes a vicarious liability claim against the employer.[8]  Rather, Puerto Rico law suggests that the intent of the settling parties is controlling.  See Merle, 97 D.P.R. at 409.  Thus, the language the parties used in the settlement agreement controls here.

_____

[7]  We have previously remarked upon "the Puerto Rico courts' 'general hostility to double recovery.'"  Río Mar, 522 F.3d at 166 (quoting Villarini-García v. Hospital del Maestro, 112 F.3d 5, 8 (1st Cir. 1997)).  The instant case, however, does not present us with an issue of double recovery because the settlement agreement here does not represent plaintiffs' actual damages.  Cf. Villarini-García, 112 F.3d at 8 (favoring dollar-for-dollar setoff of an employer's settlement in case concerning vicarious liability where there existed a jury award against employee physician).

[8]  Jurisdictions across the United States are split regarding this proposition of law.  The most recent Restatement sets out the majority position as follows:

> d. Vicariously liable parties. When multiple parties are treated as a single entity for the purpose of assigning responsibility . . .  a settlement with one of those parties extinguishes the liability of the others.

See Restatement (Third) of Torts: Apportionment of Liability § 16 cmt. d (2000).

However, we note that several jurisdictions have declined to follow this majority common law rule.  See Ritter v. Technicolor Corp., 103 Cal. Rptr. 686 (Cal. Ct. App. 1972); Kellen v. Mathias, 519 N.W.2d 218 (Minn. Ct. App. 1994); Van Cleave v. Gamboni Constr. Co., 706 P.2d 845 (Nev. 1985); Cartel Capital Corp. v. Fireco of New Jersey, 410 A.2d 674 (N.J. 1980); Vanderpool v. Grange Ins. Ass'n, 756 P.2d 111 (Wash. 1988); Swanigan v. State Farm Ins. Co., 299 N.W.2d 234 (Wis. 1980).

-13-

Turning to merits of plaintiffs' Article 1803 claim, in Borrego v. United States, we stated that we must consider the following three elements in deciding whether to impose liability under the doctrine of respondeat superior consistent with Puerto Rico law: an employee's "a) [d]esire to serve, benefit, or further his employer's business or interest[;] b) [whether] the act is reasonably related to the scope of the employment[; and] c) [whether] the agent has not been prompted by purely personal motives." 790 F.2d 5, 7 (1st Cir. 1986) (internal quotation marks omitted). Among these elements, "[t]he fundamental consideration for determination of an employer's liability is whether or not the employee's acts fall within the scope of his employment in the sense that they furthered a desire to serve and benefit the employer's interest, resulting in an economic benefit to the employer." Id. (citing Martínez v. Comunidad Mateo Fajardo, 90 D.P.R. 461, 1964 WL 14313 (P.R. 1964) & Lloréns v. Lozada, 73 D.P.R. 271, 1952 WL 8040 (P.R. 1952)); see also Meléndez Colón v. United States Dep't of the Navy, 56 F. Supp. 2d 147, 151 (D.P.R. 1999) (citing to rule in Borrego).

After noting that "[t]he general rule in Puerto Rico is that a trip made by an employee simply in order to get from his home to his work is not one in the course of his employment," Borrego, 790 F.2d at 7, the Borrego court nevertheless concluded that a supervisor working for the government was acting within the

-14-

scope of his employment when he struck another car while driving an assigned vehicle from his home to the office. Id. The court so held because the employee used the assigned vehicle as "an essential part of his work and [] is obligated to take the car home so that he can perform his duties more effectively." Id. The court further stated that the employer was the principal beneficiary of the "more efficient use of the employee's time." Id.

The instant case turns on our determination of whether Serrano was acting within the scope of his employment when the accident occurred. However, gaps in the present complaint make our task difficult. Most notably, the complaint is unclear regarding the extent to which ICN relied on Serrano's use of the car he was driving at the time of the accident, an important factor in Borrego. While plaintiffs allege that Serrano's vehicle was insured by ICN's insurance policies -- an alleged fact suggesting that ICN accepted a degree of responsibility for the vehicle and that the vehicle may have been pertinent to Serrano's job -- the complaint does not provide any additional details regarding the nature of Serrano's relationship to his vehicle. Further, the complaint does not state whether Serrano was leaving the Christmas party to go home. If Serrano was traveling from a remote work site to home, under Borrego he may be covered. See id. at 7-8.

Although this is a close case, we conclude that from the facts alleged in the complaint, drawing all reasonable inferences in favor of the plaintiffs, it could reasonably be inferred that Serrano's use of the vehicle that evening was done with ICN's economic interest in mind and that ICN benefitted from the "more efficient use of the employee's time." See Borrego, 790 F.2d at 7. We are confident that pre-trial proceedings will help shed light on any factual disputes regarding Serrano's use of the vehicle, and whether ICN benefitted therefrom, but at this stage of the proceedings, it remains possible that plaintiffs have stated a claim for recovery under Article 1803.[9]

### III.  Conclusion

In sum, we hold that under Article 1802 and the Puerto Rico Supreme Court's holding in López, ICN is not liable on plaintiffs' claims because it is not a public commercial establishment engaged in the sale of alcoholic beverages. However, we hold that plaintiffs' vicarious liability claim under Article

---

[9]  We note that in reaching its conclusion as to plaintiffs' Article 1803 claim, the district court went outside the complaint and impermissibly relied on facts from Serrano's unsworn declaration. These facts included that ICN, as part of a compensation package, gave Serrano an automobile allowance of $9000 per year; that Serrano owned the vehicle, not ICN; and that Serrano purchased the vehicle from his previous employer. Even if we assume these facts to be true, other facts, including Serrano's destination, are relevant to a proper scope-of-employment analysis. Therefore, mindful of the fact that at this stage we are required to draw all inferences in favor of the plaintiff, we believe remand to the district court for additional factfinding on this issue is the prudent course to take.

-16-

1803 survives because the facts as alleged in the complaint support a reasonable inference that Serrano was acting within the scope of his employment when the tragic accident occurred.

The decision of the district court is **affirmed** with respect to plaintiffs' Article 1802 claim and **reversed and remanded** to the district court with respect to plaintiffs' Article 1803 claim.

**<u>Affirmed in part and Reversed and Remanded in part</u>. No costs are awarded.**