ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| ELIEL ORTHO MEDICAL CORP. <br><br> Parte Apelante <br><br> v. <br><br> SKELETAL DYNAMICS, LLC; BLOG MEDICAL, LLC; ORTHO ELITE SN CORP.; ORTHO ELITE GROUP, LLC; MEDI-TECH ORTHOPEDICS, INC.; JOSÉ M. MATOS ENCARNACIÓN T/C/C JOSÉ M. MATOS <br><br> Parte Apelada | TA2025AP00028 | *Apelación*, procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Caso Núm.: SJ2023CV09407 <br><br> Sala: 907 <br><br> Sobre: <br><br> Regla 59 de Procedimiento Civil; Solicitud de Sentencia Declaratoria; Ley de Contratos de Distribución de Puerto Rico; Interferencia Torticera; Daños y Perjuicios; Acción Civil; Violación de Ley 80 de 3 de junio de 2011 |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de agosto de 2025.

Compareció ante este Tribunal la parte apelante, Eliel Ortho Medical Corp. (en adelante, "Apelante" o "EOM"), mediante recurso de *Apelación* en el que nos solicita que revoquemos la *Sentencia* que emitió y notificó el Tribunal de Primera Instancia, Sala Superior de San Juan, el 20 de mayo de 2025.[1] En el referido dictamen, el foro primario desestimó sin perjuicio la "**Demanda**" sobre sentencia declaratoria, incumplimiento de contrato, interferencia torticera y daños y perjuicios que presentó EOM contra Skeletal Dynamics, LLC (en adelante, "Apelado" o "Skeletal"), Blog Medical, LLC,

---

[1] *Véase*, <u>SUMAC-TPI</u>, entrada núm. 67.

Ortho Elite SN Corp., Ortho Elite Group, LLC y Medi-Tech Orthopedics, Inc., (en adelante, "los Apelados").

Por los fundamentos que expondremos a continuación, se *revoca* el dictamen apelado.

**I.**

En diciembre de 2010, EOM suscribió un contrato de distribución con Skeletal en el que se acordó que el Apelante sería el distribuidor exclusivo de los productos de Skeletal para el mercado de Puerto Rico.[2] El contrato suscrito expiró el 31 de diciembre de 2014. Sin embargo, según alega el Apelante, las partes continuaron su relación comercial de manera verbal hasta que Skeletal decidió retirarse del mercado el 15 de julio de 2020.[3] Después de haber transcurrido treinta y cuatro (34) meses de la salida de Skeletal, EOM supo que presuntamente la empresa comenzó nuevamente a distribuir sus productos en Puerto Rico a través de otros distribuidores.[4]

Ante ello, el 5 de octubre de 2023, EOM presentó la "**Demanda**" de epígrafe contra Skeletal y los Apelados.[5] Arguyó que el abandono de Skeletal del mercado de Puerto Rico constituyó un subterfugio para evadir su responsabilidad bajo la Ley Núm. 75 de 24 de junio de 1964, conocida como la "Ley de Contratos de Distribución", 10 LPRA sec. 1078 *et seq.* (en adelante, "Ley Núm. 75"). Sostuvo, además, que el Apelado actuó de mala fe, pues se benefició de la plusvalía y la clientela que EOM desarrolló como parte de sus funciones como distribuidor. Por ende, Skeletal estaba obligado a compensarle por todos los daños, según dispone la Ley Núm. 75.

También señaló que los Apelados son copartícipes de los actos fraudulentos de Skeletal, al interferir en la relación contractual que tenía con la empresa manufacturera, a sabiendas de que EOM era su distribuidor exclusivo, por lo que deben responder solidariamente.[6]

---

[2] Íd., entrada núm. 41, Anejo I.
[3] Íd., entrada núm. 1.
[4] Íd.
[5] Íd.
[6] Íd.

Posteriormente, EOM enmendó la "**Demanda**" para incluir al Sr. José M. Matos Encarnación t/c/c José M. Matos (en adelante, "señor Matos Encarnación") como parte demandada.[7] Después de varios trámites procesales, Skeletal presentó una "**Notificación de Aviso de Traslado al Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico**".[8] De conformidad, el TPI ordenó el archivo administrativo y paralización del proceso.[9]

Luego de que el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico devolviera el caso al foro apelado, EOM presentó una "**Solicitud de Continuación del Caso y Anotación de Rebeldía contra Skeletal Dynamics, LLC; Blog Medical LLC; Ortho Elite SN Corp.; Ortho Elite Group LLC; Medi-Tech Orthopedics, Inc.**".[10] Los Apelados se opusieron a la petición y solicitaron sanciones contra EOM.[11] También Skeletal se opuso, pero, además, solicitó un término para presentar una moción dispositiva.[12] EOM replicó ambas mociones.[13]

En atención a lo solicitado por las partes, el TPI dejó en suspenso la petición de anotación de rebeldía y le concedió a Skeletal el término solicitado.[14] El restante de los Apelados también notificaron su intención de presentar un escrito dispositivo.[15] Así las cosas, el 22 de noviembre de 2024, los Apelados solicitaron la desestimación de la "**Demanda**" al amparo de las Reglas 6.1 y 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1 y 10.2 (5), por insuficiencia de las alegaciones para sostener una reclamación que justifique la concesión de un remedio.[16]

Por su parte, Skeletal sometió su "**Moción de Desestimación**" en virtud de la Regla 10.2 (5) de Procedimiento Civil, *supra*.[17] Argumentó que el TPI carecía de jurisdicción para atender la controversia, pues el contrato

---

[7] Íd., entrada núm. 12.
[8] Íd., entrada núm. 18.
[9] Íd., entrada núm. 19.
[10] Íd., entradas núms. 20 y 21.
[11] Íd., entrada núm. 23.
[12] Íd., entrada núm. 33.
[13] Íd., entradas núms. 25 y 35.
[14] Íd., entrada núm. 34.
[15] Íd., entrada núm. 37.
[16] Íd., entrada núm. 38.
[17] Íd., entrada núm. 41.

original tiene una cláusula de arbitraje que abarca controversias relativas a la terminación de la relación contractual habida entre las partes y que subsistió luego de su terminación. Ello, debido a una estipulación de supervivencia contenida también en el acuerdo. En esa misma línea, Skeletal también sostuvo que, luego de la terminación del contrato original, "las partes continuaron bajo los mismos términos previamente acordados".[18] A la luz de lo anterior, planteó que "no proced[ía] que se pas[ara] por alto la cláusula de arbitraje pactada entre las partes".[19] En la alternativa, reclamó que las alegaciones de EOM eran insuficientes para justificar la concesión de un remedio, por causa de que la acción estaba prescrita por haberse presentado fuera del término de tres (3) años que dispone la Ley Núm. 75, *supra*.

EOM se opuso a ambas solicitudes de desestimación presentadas por los Apelados y Skeletal.[20] En cuanto al planteamiento de Skeletal, sobre la falta de jurisdicción del TPI para adjudicar la controversia, adujo que la cláusula de arbitraje se extinguió con el acuerdo original en el 2014, toda vez que la relación de distribución continuó bajo el aludido acuerdo verbal que contenía términos distintos al contrato escrito. Sostuvo, además, que la causa incoada no prescribió, pues el plazo de tres (3) años que dispone la Ley Núm. 75, *supra*, comenzó a transcurrir en el 2023, cuando Skeletal se reincorporó al mercado de Puerto Rico y no en el 2020, cuando anunció su retiro.

Tras varias incidencias procesales que no son necesarias pormenorizar, el 20 de mayo de 2025, el foro de instancia dictó *Sentencia* mediante la cual concluyó que no tenía jurisdicción para resolver el pleito presentado por EOM y desestimó, sin perjuicio, la "**Demanda**". Por último, remitió la controversia al proceso de arbitraje dispuesto en el Artículo XI, Sección 11.5 del Contrato celebrado en el 2010 entre EOM y Skeletal.[21]

---

[18] Íd., págs. 10-11.
[19] Íd., pág. 11.
[20] Íd., entradas núms. 43 y 45.
[21] Íd., entrada núm. 67.

Oportunamente, el Apelante solicitó la reconsideración de la *Sentencia*.[22] Sin embargo, el TPI declaró "No Ha Lugar" su petición.[23] Inconforme, EOM acudió ante nosotros mediante el recurso de epígrafe, en el que señaló los siguientes seis errores:

ERRÓ EL TPI AL CONCLUIR QUE LA CLÁUSULA DE ARBITRAJE DEL CONTRATO ESCRITO DE 2010 QUE EXPIRÓ, CONFORME A SUS TÉRMINOS, EN DICIEMBRE DE 2014, SOBREVIVIÓ LA TERMINACIÓN DE DICHO CONTRATO Y ALCANZÓ EL NUEVO CONTRATO VERBAL ENTRE SKELETAL Y EOM, QUE COMENZÓ EN ENERO DE 2015.

ERRÓ EL TPI AL CONCLUIR QUE, EN VIRTUD DE LA CLÁUSULA DE SUPERVIVENCIA DEL CONTRATO ESCRITO DE 2010, LA CLÁUSULA DE ARBITRAJE DE DICHO CONTRATO SOBREVIVIÓ SU TERMINACIÓN Y ALCANZÓ LA CONTROVERSIA QUE SURGIÓ ENTRE LAS PARTES POR HECHOS OCURRIDOS EN EL 2020, ESTANDO VIGENTE EL CONTRATO VERBAL.

ERRÓ EL TPI AL RESOLVER QUE LA CLÁUSULA DE ARBITRAJE DEL CONTRATO ESCRITO SOBREVIVIÓ Y SE EXTENDIÓ A LA CONTROVERSIA QUE SURGIÓ POR HECHOS OCURRIDOS DESPUÉS DE LA TERMINACIÓN DE DICHO CONTRATO, A PESAR DE QUE LA CLÁUSULA DE SUPERVIVENCIA NO HACE REFERENCIA ALGUNA A LA CLÁUSULA DE ARBITRAJE DEL CONTRATO ESCRITO, NI CONTIENE LETRA ALGUNA QUE PERMITA INFERIR QUE LA INTENCIÓN DE EOM Y SKELETAL FUE QUE SE EXTENDIERA AL CONTRATO VERBAL SUBSIGUIENTE.

ERRÓ EL TPI AL IGNORAR LA JURISPRUDENCIA DISPOSITIVA CITADA POR EOM QUE CLARAMENTE ESTABLECE QUE LA CLÁUSULA DE ARBITRAJE CONTENIDA EN UN CONTRATO ESCRITO EXPIRADO NO SE PUEDE INVOCAR PARA DILUCIDAR CONTROVERSIAS QUE SURGEN BAJO UN ACUERDO VERBAL POSTERIOR ENTRE LAS PARTES.

ERRÓ EL TPI AL: A) NO CONCLUIR QUE EL CONTRATO DE 2010 EXPIRÓ EN DICIEMBRE DE 2014, DE ACUERDO CON SUS PROPIOS TÉRMINOS, Y B) AL NO APLICAR LA LEY DE CONTRATOS DE LA FLORIDA, CUYO STATUTE OF FRAUDS, O LEY DE FRAUDES, ESTABLECE QUE TODO CONTRATO VERBAL CUYA DURACIÓN EXCEDA DE UN AÑO, PARA SER VÁLIDO Y EXIGIBLE, TIENE QUE CONSTAR POR ESCRITO.

ERRÓ EL TPI AL IGNORAR LA CAUSA DE ACCIÓN CONTRA LOS CODEMANDADOS SOBRE INTERFERENCIA CONTRACTUAL TORTICERA.

El 17 de julio de 2025, Medi–Tech Orthopedics, Inc., Ortho Elite SN Corp., Ortho Elite Group, LLC. y Blog Medical, LLC presentaron su "**Oposición a Apelación Civil**". Así las cosas, el 18 de julio de 2025, emitimos *Sentencia* que fue notificada ese mismo día. Oportunamente, Skeletal presentó "**Moción de Reconsideración**", a la cual unió su

---

[22] Íd., entrada núm. 68.
[23] Íd., entrada núm. 69.

"**Alegato en Oposición a 'Apelación'**". Mediante el primero de dichos escritos, Skeletal solicitó que reconsideráramos nuestra *Sentencia* del 18 de julio de 2025, pues mediante *Resolución* de 14 de julio de 2025 le concedimos una prórroga para presentar su alegato en oposición hasta el 24 de julio de 2025.

En vista de lo anterior, el 5 de agosto de 2025, emitimos *Resolución* a través de la cual declaramos "**Ha Lugar**" la solicitud de reconsideración presentada por Skeletal y acogimos el alegato en oposición presentado junto con la moción.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**[24]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994); Guadalupe Solís v. González Durieux, 172 DPR 676, 683 (2007). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes contratantes, por lo que desde el momento de su perfeccionamiento cada uno se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1044 y 1210 del Código Civil de Puerto Rico, 31 LPRA

---

[24] A pesar de que el Código Civil de Puerto Rico de 1930, fue derogado efectivo el 28 de noviembre de 2020, por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020, a la controversia de autos le aplica el derogado Código Civil. 31 LPRA sec. 11717.

sec. 2994 y 3375 (énfasis suplido). Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de Puerto Rico, 31 LPRA sec. 3371.

En ese sentido, un contrato existe desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 3451.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de Puerto Rico, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev., S.E., 137 DPR 860, 875 (1995). La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa.

En materia contractual, es norma conocida que, si "los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Art. 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 3471. Es por ello que nuestro Tribunal Supremo ha reconocido que cuando los términos de un contrato,

sus condiciones y sus exclusiones son claros y específicos, y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. San Luis Center Apts. *et al.* v. Triple-S, 208 DPR 824, 832 (2022); Rivera Rodríguez v. Rivera Reyes, 168 DPR 193, 212 (2006).

No obstante, cuando de la lectura del texto, las cláusulas no son claras o no permiten una comprensión única de lo acordado, los tribunales estamos llamados a interpretar el contrato partiendo de la verdadera y común intención de las partes. Merle v. West Bend Co., 97 DPR 403, 409-410 (1969). Igualmente, se debe presuponer la "lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas". SLG Irizarry v. SLG García, 155 DPR 713, 726 (2001).

Partiendo de esta premisa, al momento de interpretar el contrato y establecer cuál es la intención de las partes, debemos recurrir a las normas de hermenéutica contractual establecidas en los Artículos 1233 al 1241 del Código Civil de Puerto Rico, 31 LPRA secs. 3471-3479. En lo específico a la controversia ante nos, el Código Civil establece que, para juzgar la intención de las partes habrá que recurrir a los actos anteriores, coetáneos y posteriores al contrato. 31 LPRA sec. 3472. Al efectuar dicha faena interpretativa, no se deberán entender comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar. 31 LPRA sec. 3473. Por otro lado, las cláusulas del contrato se interpretarán "de manera integral y no aisladamente, buscando su verdadero sentido, atendiendo a la interpretación de unas cláusulas con relación a otras". CNA Casualty of P.R. v. Torres Díaz, 141 DPR 27, 39 (1996), Art. 1237 del Código Civil, 31 LPRA sec. 3475.

Ahora bien, los tribunales tenemos la ineludible labor de velar por el cumplimiento específico de toda obligación contractual, sin relevar a las partes contratantes del cumplimiento de ésta. Siempre velando porque el contrato esté enmarcado en el ámbito de lo legítimo y no adolezca de vicio alguno. Cervecería Corona v. Commonwealth Ins. Co., 115 DPR 345, 351 (1984); Olazábal v. U.S. Fidelity,etc. 103 DPR 448, 462 (1975).

**B.**

La Ley Núm. 75, *supra*, regula los contratos de distribución en nuestra jurisdicción. Su propósito principal es "armonizar los intereses y nivelar las condiciones de contratación de dos partes económicamente dispares", vinculadas por una relación comercial de distribución. Next Step Medical v. Biomet, Inc., 195 DPR 739, 748 (2016) (citando a Next Step Medical v. Bromedicon *et al.*, 190 DPR 474, 488 (2014)). Tiene como finalidad proteger a los distribuidores locales contra las prácticas abusivas por parte de empresas domésticas y del exterior o de sus agentes en Puerto Rico que, sin justa causa, menoscaban arbitrariamente las relaciones contractuales establecidas, una vez dichos distribuidores han creado un mercado favorable a sus productos y servicios. Next Step Medical v. Bromedicon *et al.*, *supra*, pág. 489. Por tal razón, esta ley está revestida de una importante política pública. Next Step Medical v. Biomet, Inc., *supra*, pág. 748.

Sin embargo, debido a que los tribunales estatales, así como el Tribunal Federal para el Distrito de Puerto Rico han validado y aplicado las disposiciones de la Ley Núm. 75, *supra*, algunos empresarios han recurrido a la aplicación de mecanismos y procedimientos que limitan las alternativas de los distribuidores para reclamar sus derechos.[25] Uno de éstos es la inclusión de las cláusulas de arbitraje en los contratos de distribución. Íd.

Según la Exposición de Motivos de la Ley Núm. 448-2000, las cláusulas de arbitraje compulsorio en un contrato de distribución limitan las opciones de las partes para reclamar sus derechos, al descartar a los tribunales de justicia como opción en la búsqueda de remedios. En vista de lo anterior, la Legislatura de Puerto Rico enmendó la Ley Núm. 75 para añadir el Artículo 3-C, con el propósito de establecer como requisito indispensable y a solicitud de cualquier parte, que un tribunal con jurisdicción en Puerto Rico revise y determine si la cláusula de arbitraje pactada en un contrato de distribución fue suscrita de forma libre y voluntaria. En específico, dicho artículo dispone lo siguiente:

---

[25] *Véase*, Exposición de Motivos de la Ley Núm. 448-2000, que añadió el Artículo 3-C a la Ley Núm. 75, *supra*.

Antes de que pueda invocarse o ponerse en vigor cualquier convenio o cláusula que obligue a las partes a resolver mediante arbitraje cualquier controversia surgida bajo un contrato de distribución otorgado al amparo de la presente Ley, **será requisito indispensable antes de que dicha controversia pueda ser sometida a arbitraje, a solicitud de cualquiera de las partes, que un Tribunal con jurisdicción en Puerto Rico determine que dicha cláusula o convenio de arbitraje fue suscrito en forma libre y voluntaria por ambas partes.**

**Existirá una presunción controvertible de que cualquier convenio o cláusula de arbitraje contenida en un contrato de distribución fue incluida o suscrita a instancia del principal o concedente, y de que cualquier convenio o cláusula que obligue a las partes a resolver mediante arbitraje cualquier controversia surgida bajo dicho contrato es un contrato de adhesión, a ser interpretado y puesto en vigor como tal.**

Se dispone asimismo que en caso de que las partes hayan pactado resolver mediante arbitraje cualquier controversia surgida bajo un contrato de distribución, pero no hayan acordado específicamente un árbitro, entidad o foro arbitral, o no puedan ponerse de acuerdo en cuanto a dicho árbitro, entidad o foro, sea un Tribunal con jurisdicción en Puerto Rico el que determine o designe el árbitro, entidad o foro que adjudicará las controversias surgidas bajo dicho contrato de distribución. 10 LPRA sec. 278b-3 (énfasis suplido).

**C.**

La Regla 10.2 de Procedimiento Civil y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio**; y (6) la falta de una parte indispensable. 32 LPRA Ap. V., R. 10.2; Inmobiliaria Baleares, LLC v. Benabe González, 214 DPR ___ (2024), 2024 TSPR 112; Rodríguez Vázquez y otros v. Hosp. Esp. Auxilio Mutuo y otros, 215 DPR ___; 2025 TSPR 55.

Al considerar una moción para desestimar una demanda por ésta dejar de exponer una reclamación que justifique la concesión de un remedio, debe ser evaluada de forma crítica. Íd., pág. 19. Ello, puesto que el tribunal está obligado a tomar como ciertos los hechos bien alegados en la demanda. Hecha esta salvedad, el Tribunal interpretará las aseveraciones

de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera Sanfeliz, *et al.* v. Jta. Dir. First Bank, 193 DPR 38, 49 (2015). De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. El Día, Inc. v. Mun. de Guaynabo, 187 DPR 811, 821 (2013); Consejo Titulares v. Gómez Estremera, 184 DPR 407, 423 (2012).

Relacionado con lo anterior, la jurisprudencia ha identificado casos que contienen elementos subjetivos, de intención, propósitos mentales o negligencia. A saber, "controversias en las que el factor credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo". Rosario Ortiz v. Nationwide Mutual Insurance Co., 158 DPR 775, 780-781 (2003). A esos efectos, "la privación a un litigante de su 'día en

corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros. Íd., pág. 780.

**III.**

El Apelante sostiene, en esencia, que el foro de instancia incidió al determinar que la cláusula de arbitraje contenida en el contrato de distribución que suscribieron las partes en el 2010 sobrevivió la terminación de dicho acuerdo y rige la controversia actual entre EOM y Skeletal. En su opinión, el TPI incidió al concluir que su reclamo sobre la terminación sin justa causa del contrato verbal que surgió en el 2015 debía tramitarse "mediante el mecanismo arbitral pactado" en el contrato original. Entiende que debido a la naturaleza verbal del contrato "no existe - ni puede existir - un pacto escrito que obligue a EOM a someter su reclamación a arbitraje".

Al referirnos al legajo apelativo ante nos, se puede constatar que ante el TPI existía una controversia relacionada a cuáles eran los términos y condiciones que estuvieron vigentes al momento en que Skeletal alegadamente comenzó a distribuir los productos en Puerto Rico, luego de su retiro en el año 2020; entiéndase, si las disposiciones contractuales originales contenidas en el acuerdo escrito continuaban vigentes por vía de la cláusula de supervivencia dispuesta en el Artículo 10.4 de dicho contrato o si las partes establecieron una nueva relación contractual verbal con nuevos términos y condiciones.

Como se percibe, dicha controversia era medular que se resolviera **antes** de que se adjudicara el asunto jurisdiccional planteado por Skeletal. Esto, pues, era indispensable que se hiciera dicha determinación previo a concluir que la cláusula de arbitraje aplicaba en toda su extensión, como lo estableció el TPI en la *Sentencia* apelada. No obstante, esa determinación requería que las partes aportaran la prueba necesaria para establecer sus teorías con respecto al contrato que aplicaba a la controversia presentada. Nótese, pues, que ante el foro de instancia existía una controversia rodeada de elementos subjetivos y de intención que era imposible adjudicar sin que el juzgador de los hechos pudiera apreciar la prueba y adjudicarle la credibilidad que le mereciera a la prueba testifical.

No habiéndose celebrado una vista evidenciaria para que se le probara al Tribunal cuál era el contrato vigente al momento de la alegada terminación de la relación de distribución existente entre las partes, procede que se devuelva el caso ante el foro apelado para que se celebre una audiencia en la que cada parte aporte prueba a favor de sus respectivas posturas. Es decir, dando por ciertas las alegaciones bien formuladas de la "**Demanda Enmendada**", no procedía la desestimación del pleito, pues existen versiones encontradas sobre cuál es la relación contractual que está en controversia. Una vez el juzgador de instancia reciba la prueba concerniente a la relación contractual presuntamente incumplida, entonces es que el TPI estará en condiciones de adjudicar la controversia jurisdiccional mediante la determinación de si la cláusula de arbitraje en cuestión es o no aplicable al caso de autos.

En caso de entender que dicha disposición de resolución alternativa de disputas es aplicable, deberá entonces evaluarla a la luz del Artículo 3-C de la Ley Núm. 75, *supra*, que establece que antes de someter a arbitraje cualquier controversia que surja bajo un contrato de distribución es requisito indispensable que un tribunal con jurisdicción en Puerto Rico disponga si la cláusula de arbitraje contenida en dicho acuerdo fue pactada de forma libre y voluntaria por las partes.

En otras palabras, conforme las disposiciones taxativas del estatuto, antes de hacer efectiva la aplicabilidad de una cláusula de arbitraje de un contrato de distribución, es requisito *sine qua non* que el Tribunal efectúe una determinación de voluntariedad del consentimiento a suscribir este tipo de disposición de resolución de conflictos. Más aún cuando estamos ante una cláusula de arbitraje abarcadora, que incluye toda disputa, controversia o diferencia que pueda de algún modo surgir entre las partes contratantes en relación con el contrato y su terminación. Así, esa cláusula recae sobre la sustancia misma o la cosa objeto del acuerdo en cuestión. Como hemos visto, el consentimiento sobre esa cláusula debe ser informado y completo para que fuera realmente "libre y voluntario".

El Artículo 3-C de la Ley Núm. 75, *supra*, dio a los tribunales, de manera expresa, injerencia para auscultar y corroborar ese hecho, como requisito previo para su abstención jurisdiccional. La decisión final sobre ese asunto es de la exclusiva competencia del foro de primera instancia, en el ejercicio de su más sana discreción.

Ante estas circunstancias particulares, reiteramos que procede que revoquemos la *Sentencia* apelada y devolvamos el caso al TPI para que celebre la correspondiente vista evidenciaria y se diluciden las controversias planteadas que inciden sobre la autoridad en ley de los tribunales para adjudicar los méritos de las controversias traídas por las partes. Ello es medular, pues tenemos versiones en las que el factor credibilidad juega un papel esencial y decisivo para arribar a la verdad.

Finalmente, en su alegato en oposición al recurso ante nos, Skeletal argumentó, alternativamente, que aún si se entendiera que la reclamación no estaba sujeta al proceso de arbitraje, la "**Demanda Enmendada**" no justificaba la concesión de un remedio pues la misma estaba prescrita, al amparo del Artículo 5 de la Ley Núm. 75, *supra*. Para fundamentar su postura, Skeletal arguye que el plazo prescriptivo de tres (3) años que establece el estatuto comenzó a transcurrir desde el 15 de julio de 2020, fecha en que fue efectivo su retiro del mercado en Puerto Rico. Así pues, sostiene que el aludido término venció "a más tardar en mayo de 2023".[26]

Igualmente, plantea que, si se asumiera que el acto del menoscabo ocurrió posteriormente, se desprende de la "**Demanda Enmendada**" que el 13 de agosto de 2020 EOM advino en conocimiento de que Skeletal tenía intenciones de regresar al mercado de Puerto Rico. Por tanto, sostiene que si considerara que esa fecha activa el término prescriptivo de tres (3) años, el mismo venció en agosto de 2023 y el pleito se incoó en octubre de 2023, por lo que la reclamación estuviera igualmente prescrita. No nos convence su postura. Nos explicamos.

---

[26] *Véase*, Alegato en Oposición a "Apelación", SUMAC TA Núm. 8, Anejo 1, pág. 20.

A poco que examinemos las alegaciones contenidas en la "**Demanda Enmendada**", nos percatamos que el Apelante advino en conocimiento de que los productos de Skeletal habían reaparecido en el mercado a 34 meses de la fecha de vigencia de su retiro. A esos efectos, EOM alegó lo siguiente:

> Apenas transcurridos treinta y cuatro (34) meses del supuesto abandono del mercado, EOM se enteró que los Productos de Skeletal habían reaparecido, y se estaban usando en procedimientos quirúrgicos, en hospitales de Puerto Rico.[27]

Por tanto, distinto a lo argumentado por Skeletal en su comparecencia ante este Tribunal, sí existe una alegación específica por parte del Apelante del momento en que tuvo conocimiento de que Skeletal reintrodujo sus productos al mercado de Puerto Rico y que marca la fecha del plazo prescriptivo que dispone la Ley Núm. 75, *supra*. Es a partir de ese hecho que EOM sostiene en su "**Demanda Enmendada**" que los Apelados se han beneficiado de la plusvalía y la clientela que el Apelante desarrolló como resultado de su actividad como distribuidor de los productos de Skeletal. Es por ello que el Apelante alega en la "**Demanda Enmendada**" que: "En su carta de 13 de agosto de 2020, EOM reiteró su interés y disponibilidad para continuar como distribuidor de los Productos, si Skeletal decidía regresar al mercado de Puerto Rico"[28] y que "Skeletal, en cambio, optó por regresar de la mano de los codemandados".[29]

Analizadas dichas alegaciones de la forma más beneficiosa y a favor de EOM, es evidente que la reclamación no está prescrita. Lo anterior, debido a que si tomamos los 34 meses posteriores a la fecha de efectividad del retiro de Skeletal del mercado de Puerto Rico (15 de agosto de 2020) ocurrieron para el mes de mayo de 2023. Entonces, es desde esa fecha que el Apelante supo de la alegada violación de la Ley Núm. 75, *supra*, y, por tanto, presentó el pleito dentro del plazo prescriptivo que dispone dicho estatuto. El Artículo 5 de la ley establece taxativamente que "[t]oda acción derivada de esta ley prescribirá a los tres años a contar de la fecha de la

---

[27] *Véase*, SUMAC-TPI, entrada núm. 12, pág. 9.
[28] Íd.
[29] Íd.

terminación definitiva del contrato de distribución, **o de la realización de los actos de menoscabo, según sea el caso**". 10 LPRA sec. 278d (énfasis suplido). Conforme lo alega EOM en la "**Demanda Enmendada**", la realización del acto que menoscabó la presunta relación contractual entre las partes se dio para el mes de mayo del 2023 y la presentación de la "**Demanda**" original por parte del Apelante se radicó el 5 de octubre de 2023. Entiéndase, dentro del término prescriptivo que provee la Ley Núm. 75, *supra*.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *revoca* la *Sentencia* apelada y se devuelve el caso al TPI para la continuación de los procedimientos consistentes con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones