ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| DAISY NEGRÓN MORALES<br><br>Parte Apelada<br><br>v.<br><br>PABLITO DOMENECH T/C/C PABLO DOMENECEH T/C/C PABLO DOMENECH CRISPÍN<br><br>Parte Apelante | TA2025AP00190 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: LO2025CV00086<br><br>Sobre: Regla 60 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2025.

Compareció ante este Tribunal la parte apelante, el Sr. Pablito Domenech Crispín (en adelante, el "señor Domenech Crispín" o "Apelante"), mediante recurso de apelación presentado el 31 de julio de 2025. Nos solicitó la revocación de la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, el "TPI"), el 4 de junio de 2025. Dicho dictamen fue objeto de una "**Moción de Reconsideración**", la cual fue declarada "No Ha Lugar" el 2 de julio de 2025.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso de autos tuvo su inicio el 15 de mayo de 2025, con la presentación de una "**Demanda sobre Cobro de Dinero**" (en adelante, "Demanda") por parte de la Sra. Daisy Negrón Morales (en adelante, la "señora Negrón Morales" o "Apelada") en contra del señor Domenech Crispín, en virtud del procedimiento sumario dispuesto en la Regla 60 de

Procedimiento Civil, *infra*. Mediante esta, la Apelada alegó que el Apelante le adeuda la cantidad de $10,548.29 por concepto de cierto préstamo para la construcción de un cuarto en una propiedad perteneciente al señor Domenech Crispín, donde ambos residían. Explicó que, cuando la construcción del referido cuarto se encontraba a mitad, el Apelante decidió terminar con la relación habida entre ambos y se negó a pagar el mencionado préstamo. Agregó que le ha requerido al señor Domenech Crispín el pago de la suma adeudada tanto personalmente como por escrito, pero que dichos intentos habían resultado infructuosos. En vista de lo anterior, le solicitó al Tribunal que declarara "Ha Lugar" la *Demanda*.

Así las cosas, y tras varias incidencias procesales, el 4 de junio de 2025, se llevó a cabo la vista en su fondo por videoconferencia donde ambas partes declararon bajo juramento. Ese mismo día, tras escuchar y evaluar la prueba presentada, el TPI emitió una *Sentencia* en la que declaró "Ha Lugar" la *Demanda* y ordenó al Apelante a pagar la suma de $11,085.82 con un interés legal de 8.75% anual, a computarse sobre la cuantía desde la fecha de emisión del dictamen hasta que la misma sea satisfecha. Insatisfecho con lo anterior, el señor Domenech Crispín presentó una "**Moción de Reconsideración**", la cual fue declarada "No Ha Lugar" el 2 de julio de 2025.

Inconforme con lo anteriormente resuelto, el Apelante acudió ante este Tribunal de Apelaciones mediante el recurso de epígrafe, en el que señaló la comisión de los siguientes errores:

> **Primer Señalamiento de Error:** Erró el Tribunal de Primera Instancia   al declarar con lugar la demanda de cobro radicada por la parte apelada.

> **Segundo Señalamiento de Error:** Erró el Tribunal de Primera Instancia al determinar que el apelante expresó que se haría responsable de pagar el préstamo obtenido por la apelada.

> **Tercer Señalamiento de Error**: Erró el Tribunal de Primera Instancia al llevar a cabo la vista del caso en sus méritos mediante videoconferencia, esto en violación de lo establecido por la Rama Judicial   de Puerto Rico, la cual establece que las vistas probatorias deben ser atendidas de forma física y personal en el Centro Judicial.

El 15 de agosto de 2025, emitimos *Resolución* mediante la cual le concedimos a la Apelada un término para que presentara su alegato en oposición al recurso. Ha transcurrido en exceso del plazo concedido sin que ésta solicitara prórroga o compareciera en cumplimiento con nuestra orden.

En vista de lo anterior, procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**A.**

La Regla 60 de Procedimiento Civil regula el procedimiento sumario de la acción de cobro de dinero para cantidades que no excedan los quince mil dólares ($15,000.00), excluyendo intereses. 32 LPRA Ap. V, R. 60. Su propósito es "agilizar y simplificar los procedimientos en acciones de reclamaciones de cuantías pequeñas, para así lograr la facilitación del acceso a los tribunales y una justicia más rápida, justa y económica en este tipo de reclamación"*.* Asoc. Res. Colinas Metro. v. S.L.G., 156 DPR 88, 97 (2002) (énfasis omitido).

Debido a la naturaleza sumaria del procedimiento bajo la Regla 60, *supra*, las reglas de procedimiento civil ordinario sólo aplican de forma supletoria y en la medida en que sean compatibles con el propósito que persigue esta regla. Íd., pág. 98; Primera Cooperativa de Ahorro v. Hernández Hernández, 205 DPR 624, 631 (2020). Así, en el procedimiento sumario bajo la Regla 60, *supra*, se prescinde de la contestación a la demanda, del descubrimiento de prueba y de las estrictas exigencias del diligenciamiento ordinario de un emplazamiento. Íd., pág.97.

Según dispuesto en la referida Regla 60, *supra,* en lugar del emplazamiento formal, en este tipo de procesos se notificará mediante una citación que indique la fecha señalada para la vista en su fondo, con la advertencia de que en dicho proceso la parte demandada "deberá exponer su posición respecto a la reclamación, y que si no comparece podrá dictarse sentencia en rebeldía en su contra". Íd. Si la parte demandada comparece a la vista puede refutar el derecho del demandante al cobro de dinero, así

como cualquier otra cuestión litigiosa.  Asoc. Res. Colinas Metro. v. S.L.G., *supra*, pág. 99.

Ahora bien, "[s]i la parte demandada no comparece y el Tribunal determina que fue debidamente notificada y que le debe alguna suma a la parte demandante, será innecesaria la presentación de un testigo por parte del demandante y el Tribunal dictará sentencia conforme a lo establecido en la Regla 45". Íd. Es decir, que el sólo hecho de que el demandado no comparezca a la vista no releva al demandante de su obligación de demostrarle al tribunal que tiene a su favor una deuda líquida y exigible, que el demandado y que la notificación-citación a éste efectivamente se diligenció. Es decir, que el Tribunal no puede descansar simplemente en las alegaciones, aunque éstas contengan hechos específicos y detallados. Primera Cooperativa de Ahorro v. Hernández Hernández, *supra*, pág. 632.

**B.**

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Batista Valentín v. Sucn. José E. Batista Valentín y otros, 216 DPR ___ (2025); 2025 TSPR 93. A base de éste, las partes contratantes pueden establecer las condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. 31 LPRA sec. 6242. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante debe actuar de buena fe en el cumplimiento de su obligación. 31 LPRA sec. 9754 y 31 LPRA sec. 8983. Es por ello que existe un contrato desde que dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto

determinable y (3) causa lícita. 31 LPRA 6131; 31 LPRA sec. 6142; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "cuando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". 31 LPRA sec. 6161.

Ahora bien, en los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver el contrato por falta de cumplimiento con una obligación principal. 31 LPRA sec. 9823. Esto es, el perjudicado puede reclamar el cumplimiento del contrato o la resolución de la obligación con el resarcimiento de los daños causados. Íd. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995). Así, nuestro más Alto Foro ha expresado que:

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

En materia contractual, es norma conocida que, "si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras". 31 LPRA sec. 6342. Es por ello que nuestro Tribunal Supremo ha reconocido que cuando los términos de un contrato, sus condiciones y sus exclusiones son claros y específicos, y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. San Luis Center Apts. *et al.* v. Triple-S, 208 DPR 824, 832 (2022); Rivera Rodríguez v. Rivera Reyes, 168 DPR 193, 212 (2006).

No obstante, cuando de la lectura del texto, las cláusulas no son claras o no permiten una comprensión única de lo acordado, los tribunales estamos llamados a interpretar el contrato partiendo de la verdadera y común intención de las partes. Merle v. West Bend Co., 97 DPR 403, 409-

410 (1969). Igualmente, se debe presuponer la "lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas". SLG Irizarry v. SLG García, 155 DPR 713, 726 (2001).

Partiendo de esta premisa, al momento de interpretar el contrato y establecer cuál es la intención de las partes, debemos recurrir a las normas de hermenéutica contractual establecidas en los Artículos 353 al 358 del Código Civil de Puerto Rico, 31 LPRA secs. 6341-6346. En lo específico a la controversia ante nos, el Código Civil establece que, si el negocio jurídico es bilateral, la disposición ambigua debe interpretarse en sentido desfavorable a quien la redactó y en favor de la parte que tuvo menor poder de negociación. 31 LPRA sec. 6346. Por otro lado, las cláusulas del contrato se interpretarán "las unas por medio de las otras, ya pertenezcan al mismo negocio jurídico, ya a negocios jurídicos conexos, y mediante la atribución del sentido apropiado al conjunto". 31 LPRA sec. 6344. Es decir, se analizarán en su totalidad con el propósito de entender su verdadero significado. CNA Casualty of P.R. v. Torres Díaz, 141 DPR 27, 39 (1996

## C.

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta

normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**III.**

En el presente caso, el señor Domenech Crispín nos solicitó la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la *Demanda* instada en su contra.

Los primeros dos señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se tratarán de forma conjunta en la discusión. En síntesis, el Apelante argumenta que el TPI erró al: (1) declarar "Ha Lugar" la *Demanda* y (2) determinar que él estaba dispuesto a hacerse responsable del pago del préstamo obtenido por la señora Negrón Morales. No nos convence su postura. Veamos.

Del expediente ante nuestra consideración se desprende que el 15 de mayo de 2025, la señora Negrón Morales presentó una *Demanda* en contra del Apelante en virtud del procedimiento sumario dispuesto en la Regla 60 de Procedimiento Civil, *supra.* En resumidas cuentas, alegó y se desprende de la prueba presentada ante el TPI que el señor Domenech Crispín le adeuda la cantidad de $10,548.29, toda vez que ella obtuvo un préstamo con la entidad financiera Island Finance para construir un cuarto en un apartamento perteneciente exclusivamente al Apelante.

La vista en su fondo se celebró el 4 de junio de 2025. Allí, la señora Negrón Morales declaró que, con el consentimiento del Apelante, obtuvo el referido préstamo para la habilitación de un nuevo espacio en la vivienda perteneciente a este último. En detalle, testificó bajo juramento lo siguiente:

POR: HONORABLE JUEZ – IGNACIO

P Señora Negrón, explíqueme, ¿por qué está demandando al señor, eh, Domenech?

R Eh, yo estuve conviviendo con el señor Domenech por diez años y medio en el Condominio New San Juan, en Isla Verde. Eh, nosotros llegamos a un acuerdo demudarnos a una

propiedad que él tiene —y negocio— en Piñones. Eh, yo hice un préstamo para mejoras, para un cuarto. Eh... pues, luego de eso, pues, este, él le notificó a mi hijo que él se iba a separar de mí, y luego hablamos y nos separamos. Él ahora pues no quiere pagar...[1]

[…]

P Pero usted me dice... usted me... me dice que tomó un préstamo de mejoras para construir un cuarto. ¿En dónde construyeron ese cuarto o adónde lo iban a construir?

R Lo íbamos a construir en... o sea, ya se empezó en Piñones.[2]

[…]

P ¿En qué dire... en qué lugar en Piñones exactamente?

R Eh, Boca Cangrejos, Piñones, Loíza.

P ¿Alguna calle, algún número de casa, de apartamento?

R Lo tendría que buscar porque yo realmente no conozco la dirección. No, no tengo la dirección... ¡ah, sí!, en una de las facturas. Déme un.... Este, eso queda en Piñones, al lado del Restaurant Carmín, en el Kilómetro 5, 187 Torrecilla Baja.[3]

[…]

P O.K. Okay. Entonces, ¿qué pasó? Usted cogió... usted tomó ese préstamo. ¿Por cuánto, cuál fue la cuantía de ese préstamo?

R Este, la cantidad de ese préstamo fue... yo tengo aquí el historial. Fue por $10,255.53, me imagino sin los intereses y eso.[4]

[…]

P ¿Con qué institución bancaria usted tomó ese préstamo?

R Con Island Finance.

P Entonces, ¿qué pasó? Tomaron ese préstamo, ¿y qué pasó con la construcción del cuarto?

R Pues, tomamos el préstamo, yo tomé el préstamo. Se empezó la construcción; ya, este, hay paredes montadas y empañetadas. Este, luego de eso, pues él le notifica a mi hijo que me va a dejar, y entonces yo llegué a sentarme con él para discutir el caso y me dijo que sí, que... pues, que ya él no era feliz y que no... que era mejor separarnos. En ese momento pues yo le dije, este, "¿Qué va a pasar con el préstamo?", porque entonces yo no voy a pagar un préstamo por lo cual yo no voy a vivir ahí. Y él me dijo "Pues, no, yo te lo pago".

P ¿Cuándo se tomó ese préstamo?

---

[1] *Véase*, <u>SUMAC-TA</u>, Entrada Núm. 7, Anejo Núm. 1, pág. 7.
[2] *Véase*, <u>SUMAC-TA</u>, Entrada Núm. 7, Anejo Núm. 1, pág. 7.
[3] *Véase*, <u>SUMAC-TA</u>, Entrada Núm. 7, Anejo Núm. 1, pág. 8
[4] *Véase*, <u>SUMAC-TA</u>, Entrada Núm. 7, Anejo Núm. 1, pág. 8

R Luego de eso, ...

P ¿Cuándo... cuándo usted tomó ese préstamo?

R El préstamo se hizo en octubre 25 del '24.[5]

[…]

P ¿Cuándo... cuándo... cuándo ocurrió esa conversación que usted acaba de mencionar que sostuvo con el demandado, que estaban hablando sobre qué iba a pasar con ese préstamo cuando ustedes se separaran?

R Este, eso fue a finales de marzo.

P ¿De este año?

R Más o menos, como en las úl... sí, sí, de este año. Ya yo había pagado como que cinco meses del préstamo.[6]

[…]

P Le pregunto: Ese lugar donde se está construyendo ese cuarto, ¿a quién pertenece?

R Esa es la propiedad del señor Pablo Doménech.[7]

Finalmente, tras escuchar y evaluar detenidamente la prueba presentada, el foro *a quo* dictó *Sentencia* declarando "Ha Lugar" la *Demanda* y ordenó al Apelante a pagar la suma de $11,085.82, con un interés legal de 8.75% anual, a computarse sobre dicha cuantía desde la emisión del dictamen hasta su total satisfacción.

Conforme adelantáramos en los acápites anteriores, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., *supra*, pág. 779. Esto pues, es el foro de instancia quien tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, *supra*, pág. 771.

Tras un análisis riguroso y comprensivo del expediente apelativo ante nuestra consideración, incluyendo la *Demanda,* la transcripción de la prueba

---

[5] *Véase*, SUMAC-TA, Entrada Núm. 7, Anejo Núm. 1, pág. 9.
[6] *Véase*, SUMAC-TA, Entrada Núm. 7, Anejo Núm. 1, pág. 10.
[7] *Véase*, SUMAC-TA, Entrada Núm. 7, Anejo Núm. 1, págs. 10-11.

oral (TPO) y la *Sentencia*, hemos arribado a la conclusión de que el foro de instancia actuó correctamente al declarar "Ha Lugar" la *Demanda* instada por la señora Negrón Morales. Nos explicamos.

En el caso de autos, se desprende del expediente y de la TPO que la Apelada convivió alrededor de diez (10) años y medio con el señor Domenech Crispín en un apartamento ubicado en el Municipio de Loíza. Asimismo, surge del testimonio bajo juramento de la señora Negrón Morales que ésta decidió tomar un préstamo con la institución Island Finance, LLC por la cantidad de $10,548.29, con el consentimiento del Apelante, para remodelar el apartamento. Específicamente, para añadir un cuarto en la propiedad perteneciente exclusivamente al Apelante. Mientras la construcción se encontraba en progreso, el señor Domenech Crispín decidió terminar la relación, por lo que la Apelada se vio obligada a abandonar la residencia.

Al escuchar la prueba testifical, el foro de instancia le concedió entera credibilidad al testimonio de la señora Negrón Morales, y con razón. No resulta creíble la versión del señor Domenech Crispín, a los efectos de que la señora Negrón García tomó un préstamo de esa naturaleza y magnitud, destinado a realizar una mejora sustancial en su hogar, sin el conocimiento del dueño del inmueble. Por el contrario, el testimonio de la Apelada fue coherente, detallado y apoyado en hechos constatables, a saber: (1) la obtención del préstamo, (2) el inicio de la construcción, (3) la existencia de paredes ya montadas y (4) la conversación posterior en la cual el señor Domenech Crispín en la que se comprometió expresamente con la Apelada a pagar la deuda.

Esto es, de la prueba se desprende manifiestamente que el préstamo objeto de la presente controversia fue solicitado y utilizado para realizar mejoras permanentes en una propiedad que pertenece únicamente al señor Doménech Crispín. Una vez terminada la relación, la prueba demostró que entre las partes se configuraron los elementos necesarios para la existencia de un contrato en el que el Apelante se obligó a pagar el préstamo.

En ese sentido, resulta lógico concluir que corresponde al Apelante honrar su compromiso y asumir el pago de los gastos incurridos por la Apelada en relación con la obra y sobre los cuales obtuvo beneficio directo y exclusivo. Máxime, cuando el señor Domenech Crispín le manifestó a la señora Negrón García su intención de hacerse responsable por el pago del préstamo que dio lugar a la mejora del inmueble en cuestión.

En consecuencia, no hallamos en el expediente indicio alguno de que el TPI haya actuado movido por error manifiesto, prejuicio, parcialidad o pasión al otorgar entera credibilidad al testimonio de la señora Negrón Morales y declarar "Ha Lugar" su *Demanda*. Muy por el contrario, su determinación se sustenta en la evidencia presentada y en el análisis ponderado de los hechos que dieron paso a la presente controversia.

En vista de lo anterior, somos de la opinión de que el TPI actuó conforme a derecho al ordenar al señor Domenech Crispín a pagar la suma de $11,085.82, por cuanto la señora Negrón Morales ya incurrió en esos gastos como parte de la obra realizada en beneficio del Apelante.

En cuanto al tercer señalamiento de error esbozado, colegimos que el mismo concierne un asunto no planteado oportunamente ante el TPI y, por lo tanto, el Apelante falla en colocar a este foro apelativo en posición de pasar juicio sobre el mismo. Es menester destacar que los tribunales apelativos deben abstenerse de adjudicar cuestiones no planteadas ante el foro revisado. Trabal Morales v. Ruiz Rodríguez, 125 DPR 340, 351 (1990); Sánchez v. Eastern Air Lines, Inc., 114 DPR 691 (1983). Lo anterior constituye un principio de derecho firmemente arraigado en nuestro ordenamiento jurídico. Si bien los tribunales deben conceder lo que en derecho procede, independientemente del remedio solicitado, los planteamientos deben formularse adecuadamente ante el foro revisado. Dorante v. Wrangler of P.R., 145 DPR 408, 414 (1998).

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones